INCORPORATION OF THE VILLAGE OF BIRON: CROTTEAU and others, Appellants.

*May 4—June 1, 1911.*

*Villages:·Incorporation: Proof of statutory requisites: How court may be "satisfied:" Survey, where to be left: "Person residing" in territory: What lands may be included.*

1. Upon the hearing of an application for the incorporation of a village under secs. 854–856, Stats. (1898), the petition and accompanying papers, duly verified and conforming to the requirements of the statute, may be regarded as making a *prima facie* case and authorizing an order of incorporation. The court may be "satisfied" thereby that all the statutory requisites exist, within the meaning of sec. 861.

2. Leaving the survey, map, and census at the office of a corporation, which was the most frequented place in the proposed territory and the place best calculated to bring them to the attention of persons interested, was a sufficient compliance with sec. 856, requiring them to be "left at the residence or place of business within such territory of some *person residing therein.*"

3. Inclusion, within the corporate limits of a new village, of considerable territory lying between the banks of the Wisconsin river, either covered by water or composed of low islands, for which police regulation was desirable, and of a strip along the bank of a river, suitable for residences, extending from the village proper to the corporate limits of a city, and traversed by a main highway along which a trolley line from the city might be extended, was not so unreasonable or improper as to warrant disturbing the decision of the circuit court.

4. The adjacent lands which may be included with territory urban in its character within the corporate limits of a new village are such as are naturally connected therewith and are reasonably appurtenant and reasonably necessary for future growth. Language in *Fenton v. Ryan*, 140 Wis. 353, explained.

APPEAL from an order of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

Proceedings under secs. 854–866, Stats. (1898), for the incorporation of a village, known as Biron, resulting in a final order as prayed for.

The petition purported to be signed by the requisite number of freeholders, residents and taxpayers of the proposed district. It stated all facts essential to success of the proceedings. The resident population was given as 267 and area involved 986.25 acres. The survey, map, and census were verified as the statutes require. There was an affidavit as to leaving such map, census, and survey at a place in the territory for public examination, stating such place to be the office of the Grand Rapids Pulp & Paper Company. There was no controversy but that sec. 856 was complied with on that subject, except in that the language thereof is: "shall be left at the residence or place of business within such territory of some person residing therein." The matter was brought on for hearing upon requisite notice, each step being duly verified by affidavit. The map showed that about one half the territory included in the proposed corporation was within the banks of the Wisconsin river and composed largely of a low island. The territory outside the banks was in a strip along the left one composed of about 500 acres, the northerly part being occupied by a manufacturing plant and a community including most of the claimed population of the whole district. From that part the district extended southwesterly to the corporate limits of Grand Rapids, a distance of about a mile and a quarter, reaching back from the river, measuring at right angles therewith, an average of about 120 rods. Through this strip, near the river most of the way, was a main highway between the city of Grand Rapids and the manufacturing plant in the northeasterly part of the territory. On the strip between such northeasterly portion and the city of Grand Rapids there were but a few habitations. At the trial the papers aforesaid were offered in evidence. The controversy was between the petitioners and several remonstrants. In addition to the verified papers there was evidence on the part of petitioners tending to show that the population of the district was mainly made up of employees in the manufacturing industry located as afore-

said; that the land in the northeasterly part of the district and adjoining the village proper was low and marshy; that the land along the river between such village and the city of Grand Rapids was sandy and not very good for farming, but high, overlooking the river, with a highway running through it; that it was quite suitable for residential purposes and that the islands were used principally for camping in summer. There was further evidence to the effect that there were prospects of occupancy of the land along the river for residences. There was evidence on the part of protestants tending to show that some of the persons included in the census were not actual residents of the district, but no definite evidence that there were enough of such to reduce the number, some 276, as verified by the census taker, below the 200 required by law. The petitioners relied upon the verified petition and census to show the requisite population, and protestants relied upon evidence that the census taker was instructed to include all residents; that the 250 employees of the factory were mostly boys under age; that the enumeration extended to and included not only all boarders who were, in good faith, residents but in a few cases persons who were not residents.

The trial judge was personally very familiar with the whole situation and, before finally concluding the matter, made a special personal examination of the territory.

The appeal is from the order granting the petition.

For the appellants there was a brief by *W. E. Wheelan*, attorney, and *Kreutzer, Bird, Rosenberry & Okoneski*, of counsel, and oral argument by *C. B. Bird*.

For the respondents there was a brief by *Goggins & Brazeau*, and oral argument by *B. R. Goggins*.

MARSHALL, J.    The first point raised involves whether, upon the hearing of a petition, as in this case, it is competent to regard the verified papers, in due form satisfying the statu-

tory requisite to bring on such hearing, as making a *prima facie* case and authorizing an order granting the petition in absence of evidence effectually rebutting such showing.    For instance the petition, as verified, purported to be signed by six resident taxpayers of the district.    No other evidence was produced to establish or defeat such showing.    The idea of counsel for appellants is that it was not competent, under any circumstances, to grant the petition on the verified papers alone.    Nothing is cited which we can dignify as authority to sustain that.    The reasoning from the statute itself does not do it.    True, the statute, sec. 861, prescribes that "if the court, after such hearing, shall be satisfied" that all the statutory requisites exist "it shall make an order declaring that such territory, the boundaries of which shall be therein set forth, . . . shall be an incorporated village," etc., but it does not, expressly at least, suggest the instrumentalities requisite to create the necessary status of judicial satisfaction.

The court must be "satisfied," that is plain, before making an order of incorporation, but how "satisfied" is not suggested by the statute.    Doubtless, that was left, to the limit of reason, in the discretion of the judicial administrator in each case.    If "satisfied" by the verified papers alone, no evidence being produced to the contrary, or none in the judgment of the court impairing, efficiently, the probative force of such papers, then why is anything else necessary in the jurisdictional sense?    It seems that if anything else were, in contemplation of the legislature, necessary, some unmistakable indication of it would have been given in phrasing the legislative idea. True, in the quoted language is the word "hearing," but that does not, necessarily, imply more than that such hearing shall be had as is requisite to the court being "satisfied" within the meaning of the statute, before granting the petition—that all the parties in favor of and opposed to the proposition creating the village shall have ample opportunity to present the facts

from their standpoint, not in any particular manner but in
any reasonable manner the court may see fit to adopt or per-
mit.

It seems that this court in *Parsons v. Parsons,* 101 Wis. 76,.
82, 77 N. W. 147, passed on the question above discussed and
as therein indicated.    The case involved the validity of a,
final order granting the petition in adoption proceedings un-
der ch. 173, Stats. (1898).    Secs. 4022 and 4023 therein pro-
vide for a hearing on petition in such proceedings.    The na-
ture of the remedy, in that it is a specific statutory proceeding,
is the same as the one before us.    The statute, as in this case,.
provides that if the "court shall be satisfied," etc., of all the·
facts set forth in the petition it "shall make an order," etc.,.
granting the petition.    The question arose as to whether it
was competent for the court to be "satisfied" of the existence·
of certain requisites without evidence *aliunde* the petition pro-
duced as in case of an ordinary trial.    The court answered
thus, speaking of one vital point:

"True, it was determined by the verified petition only, so·
far as appears by anything in the proceedings, but, as stated
before, that was not material to the jurisdiction.    If deter-
mined without any evidence whatever [meaning any evidence·
*aliunde* the verified petition] the result would be the same.
No doubt it was competent for the county judge to have re-
quired other evidence than the petition, but he was not bound
to do so.    If satisfied of the fact by the petition itself, . . .
it was sufficient for the validity of the proceedings."

That is, as will be seen, under the wording of such a statute,.
not prescribing any particular requirements as to instrumen-
talities to produce satisfaction, the court may act on the ver-
ified papers alone if thereby "satisfied" within the meaning of
the law.

The contention is made that leaving the verified survey,.
map, and census at the office of the corporation, as was done,
was not leaving them "at the residence or place of business"
of any "person residing" within the proposed territory.

That seems somewhat hypercritical though technically perhaps correct. The purpose of the statute is to give publicity to the facts claimed to exist bearing on the merits of the movement to secure incorporation. The notice of the time and place for the hearing is required to state where the survey, map, and census are open for examination. That was done in this case. Doubtless the office where they were left was the most frequented place in the community, and the place best calculated to serve the purpose of so publishing the claimed facts. That being so, to give such significance to the words "person residing," etc., as to say that they cannot apply substantially, under the circumstances here, to the principal place of business of an artificial person in the district, would be holding technically to the letter though the spirit be satisfied to the fullest extent, contrary to the requirement of sec. 861, Stats. (1898), that defects not going to the groundwork of the organization shall not be deemed to invalidate the incorporation. The real groundwork at this point, was the leaving of the verified survey, map, and census at some place in the district well calculated to bring them efficiently to the attention of persons interested in the subject of the hearing, the standard being the "residence or place of business within such territory of some person residing therein." It would seem that there was no prejudicial departure from that standard.

It is insisted that the census was not confined to residents of the district. There is no proof of that in the record sufficient to conclusively reduce the number reported by the census taker below the requisite 200. Counsel's argument at this point is based, largely, on the theory that the verified papers, standing alone, were not sufficient proof, *prima facie,* of the facts referred to therein; that proof *aliunde* thereof was required as in case of supporting the allegations of a pleading on a trial. That has been already answered.

The last proposition is that the court exceeded the boundaries of reason in deciding that the whole territory south of the

south line of section 34, in which the village, proper, of Biron is situated, was includable within the new corporation. Counsel's argument at this point is quite delusive. By reference to the map it is seen that more than half the territory south of such line, included in the corporate limits, is within the banks of the Wisconsin river and either covered by water or composed of low islands. Doubtless it was thought the situation of all such territory was such that the peace and good order of the community at the north, as it might be affected directly—or indirectly, or both by the large city at the southwest,—made the inclusion in the corporation of the river-bounded part advisable. The part south of such line on the left bank of the river, through which the main highway runs, and as we understand the only part really available for residence purposes, consists of about 300 acres. The distances claimed by counsel are not readily, if at all, verifiable by the map. It is suggested the distance is about two miles from the most southerly boarding house on the territory to the corporate limits of the city of Grand Rapids. It seems from the map to be about the distance of a diagonal line across a section. It does not seem unreasonable to suppose, from the record, that the trial judge may fairly have come to the conclusion that the shoe-string strip, so to speak, on the left bank of the river and overlooking it, with the main highway dividing it, might, in the future, especially along the road on both sides, be used for residence purposes, and that through such territory to the community in section 34 at the northeasterly part of the territory, the electric car line will soon be extended from the city of Grand Rapids, and also, perhaps, telephone, electric lighting lines, and other conveniences characterizing the larger city, will be so extended. Other reasons might be mentioned for including this territory within the corporate limits, which might well have impressed the trial judge, aided as he was by his personal acquaintance with the situation and examination of the territory.

Incorporation of Village of Biron, 146 Wis. 444.

The case on the last proposition discussed falls sufficiently within the lines of *Fenton v. Ryan,* 140 Wis. 353, 122 N. W. 756, to preclude disturbing the opinion of the judge that it satisfies the test there laid down.    The territory includes urban territory and lands so connected therewith as to freely suggest propriety of their being included within the corporate authority and reasonable necessity to include them for future growth of the village in view of the surroundings and circumstances.    We note the language of the court in that case was, "lands . . . reasonably appurtenant and necessary for future growth."    The word "reasonably" was intended to qualify the word "necessary" as well as "appurtenant."    "Reasonably appurtenant" and "reasonably necessary" express, unmistakably, the court's meaning.    The decision should not be read, as may have been the case here on the part of appellants, as restricting interurban territory which may be included in the corporate limits of a village to such as is plainly necessary to expansion of the residential features of the village with proper facilities for an urban community.    "Reasonably necessary" is the word, as is shown sufficiently by the court's logic and expressly at one point, and with that, the judge administering the statute, primarily, must be permitted to exercise judgment within the boundaries of reason.    Moreover the same consideration must be given to his determination of matter of fact as is given in any other similar situation, in that due weight must be given here to the facilities he may properly have had in the case,—moreover, especially under the facts here, he must be presumed to have had, which could not be efficiently spread upon the record, if at all.

*By the Court.*—Order affirmed.