IN RE INCORPORATION OF THE VILLAGE OF CHENEQUA.

*October 10—November 7, 1928.*

For the appellants there was a brief by *Lockney & Lowry* and *Jacobson & Malone,* all of Waukesha, and oral argument by *Henry Lockney* and *M. A. Jacobson.*

For the respondents there was a brief by *Quarles, Spence & Quarles* and *Lines, Spooner & Quarles,* attorneys, and *J. V. Quarles* and *Louis Quarles,* of counsel, all of Milwaukee, and oral argument by *J. V. Quarles* and *Louis Quarles.*

CROWNHART, J. The trial court entered two orders in a proceeding for the incorporation of the village of Chenequa: one striking out the objections of the town of Merton to the sufficiency of the petition, and the other incorporating the village. From the first order the town of Merton appeals, and from the second the town of Merton, Mary Gibson, and Charles Gibson separately appeal. The defendants Gibson appeared at the hearing on the petition and filed objec-

tions to the incorporation. They resided and owned land within the area incorporated.

The errors assigned are: (1) The court erred in striking the objections of the town of Merton; (2) the court erred in finding that the petition for incorporation was signed by five taxpayers and residents in good faith of the territory sought to be incorporated; (3) the court erred in finding that the territory sought to be incorporated had the characteristics requisite to authorize incorporation under the constitution of Wisconsin; (4) the court erred in finding that the area did not include lands which were not reasonably appurtenant and necessary for future growth; (5) the court erred in making the order incorporating the village; (6) the court erred in excluding evidence.

The statutes involved are printed in the margin.[1] The

---

[1] "61.01. Any part of any town or towns not included in any village . . . may, upon application therefor by not less than five taxpayers and residents of such territory and upon compliance with the conditions of this chapter, become incorporated as a village. . . ."

"61.02. The persons intending to make the application for the incorporation of such village shall cause . . . an accurate survey and map . . . They shall also cause to be taken an accurate census of the resident population of such territory as it may be on some day not more than ten weeks previous to the time of making such application, exhibiting the name of every head of a family and the name of every person a resident in good faith of such territory on such day. . . ."

"61.08. If the court, after such hearing, shall be satisfied . . . it shall make an order declaring that such territory . . . shall be an incorporated village by . . . if the electors thereof shall assent thereto as hereinafter provided; . . ."

"61.10. If a majority of the votes cast at such meeting shall be against incorporation no further proceedings shall be had in respect to such incorporation under such application and order; but if a majority of such votes shall be in favor of incorporation the inhabitants of such territory shall, from the time of the recording of the order of the court aforesaid in the office of the register of deeds, be deemed a body corporate by the name specified in such order."

first question raised on this appeal is the order of the court striking out the objection of the town of Merton. By reference to the statutes it will be seen that there is no indication therein that any parties except those directly involved in the included territory of the proposed village have any interest in the incorporation of the village, and such was the holding of this court in a similar case. *In re Mosinee,* 177 Wis. 74, 187 N. W. 688. In that case territory was proposed to be annexed to a village under substantially similar statutes to those here involved. The appellants contend that there is a substantial difference between the facts and the law in *In re Mosinee, supra,* and in the instant case, and they cite *In re Schumaker,* 90 Wis. 488, 63 N. W. 1050; *State ex rel. Holland v. Lammers,* 113 Wis. 398, 86 N. W. 677, 89 N. W. 501, in which cases, under proposed organization of villages, the towns out of which the villages were carved were recognized as proper parties to the organization proceedings. While it is true that the towns were so recognized in those cases, the question here was not raised or passed upon in either case.

The legislature has power to make all laws not in contravention of the state or federal constitutions. *Bushnell v. Beloit,* 10 Wis. 155; *Field v. People,* 3 Ill. 79; *Northwestern Nat. Bank v. Superior,* 103 Wis. 43, 45, 79 N. W. 54; *Nitka v. Western Union Tel. Co.* 149 Wis. 106, 110, 135 N. W. 492; *Pauly v. Keebler,* 175 Wis. 428, 439, 185 N. W. 554. Within such limits it may create municipal corporations, and alter them, at will. See *State ex rel. Zilisch v. Auer, post,* p. 284, 221 N. W. 860, 223 N. W. 123. There can be little doubt that the legislation in question here is valid. The real question presented is whether the statutes were complied with in organizing the village of Chenequa.

The statute provides for the filing of a petition by five or more resident taxpayers within the proposed village limits for the incorporation of the village and for a public hearing

on the same. The hearing was held, and the town of Merton filed objections to the petition, which were later stricken out by the court on the theory that only residents proposing to be incorporated had any interest in the proceeding, following *In re Mosinee, supra.* From a legal standpoint that would seem to be correct. The citizens of the town outside of the proposed limits of the village could not vote on the matter. They could take no action that would be effective in any way. The legislative idea is that such citizens of the town, or the town as a municipality, have no interest in the matter. The public assets and liabilities are to be apportioned according to the assessed valuation of the respective properties of the village and town, so that the burdens of the town would be no greater after detaching the territory from the town into the proposed village than before. We think that the court properly followed the decision of this court in *In re Mosinee,* and that the objection of the town of Merton was properly stricken out.

The second question raised is whether the petition for incorporation was signed by the requisite five taxpayers, residents in good faith, of the territory sought to be incorporated. The petition was signed by eight persons. One, it is admitted, was duly qualified. The others were formerly residents of the city of Milwaukee, residing therein in rented quarters or in hotels. Each of them owned a residence in the proposed village limits which was suitable for all-year-round residential purposes, and each lived within such proposed village limits in such residence the major portion of the year. Each had a place of business in the city of Milwaukee, and went to and fro more or less regularly during that time to attend to his business. Prior to the signing of the petition the petitioners considered the matter of changing their legal residence or domicile from the city of Milwaukee to the proposed village. They each concluded to do this. Each notified the income tax assessor of his purpose

and each took out automobile licenses in Waukesha county, of which the proposed village is a part. Each testified on oath that he had in good faith changed his residence from the city of Milwaukee to his home in the proposed village. All were substantial business men of good repute. The territory embraced over two hundred actual, *bona fide* residents, not including the petitioners. Since the filing of the petition the petitioners have voted in such territory and have continuously maintained their residences therein. It appears that the petitioners, in common with a large number of other people, had expensive residences in the proposed village; that they were not able to secure through the town proper police protection for their persons or their property; that they could not secure the necessary public conveniences; and that the growth of the city of Milwaukee made it desirable to establish their residences in this territory and to live there a large part of the time, if not all the time. They were within easy driving distance of Milwaukee, and one Mr. Hitz had permanently resided in this territory for some years, and had regularly gone to and from his home to his offices in Milwaukee. There is nothing suspicious about the circumstances and nothing to indicate that the petitioners were perpetrating a fraud upon anybody or could secure any undue advantage by such change of residence. Under such circumstances it is clear that the question of residence becomes largely a question of intention. One may have more than one home, but he can have only one domicile. Where he has more than one home, each of which he occupies for a portion of a year, he is at liberty to determine in his own mind which place shall be his domicile, and, having made a determination, until he does some act which is inconsistent with the place of his domicile such place will continue to be his domicile. The court held that the petition was sufficient, and we conclude that the evidence supports this finding. *Will of Heymann,* 190 Wis. 97, 208 N. W. 913, and cases there cited.

The appellants contend that the statements that the petitioners made concerning their intent to make their domicile in the proposed village limits were self-serving and not admissible.   In the *Heymann Case, supra,* we said:

"In what we have said we do not wish to be understood as denying the right of the deceased to freely change his residence at will and for no other reason than to escape taxation in Wisconsin, and the right to choose another residence implies the right to declare his choice even for the sole purpose of making evidence to prove what his choice was. 'Such declarations are not self-serving in an improper sense, unless they are made with intent to deceive.   If they are false and made for a sinister purpose, they will meet the fate that falsehood always meets in courts of justice when discovered by the triers of fact.'   *Matter of Newcomb,* 192 N. Y. 238, 252, 84 N. E. 950."

It is admitted that the territory contains over two hundred *bona fide* residents.   The vote taken resulted in 189 for incorporation to 14 against.   The inhabitants, as claimed by petitioners, number 485.   With such a condition existing, it can hardly be conceived that reputable citizens would take a false oath to a petition when it would be so easy to secure the requisite petitioners of undoubted domicile in the district.

Next it is claimed that the territory included within the proposed village did not have the distinctive characteristics of a village, and the court erred in finding that it had such characteristics.   This proposition presents questions of fact, and, it may be conceded, troublesome questions of fact. Some similar questions were presented in *State ex rel. Holland v. Lammers,* 113 Wis. 398, 86 N. W. 677, 89 N. W. 501, and also in *Fenton v. Ryan,* 140 Wis. 353, 122 N. W. 756, where the subject is elaborately treated.   The appellants contend that the incorporation of the village is in violation of the constitution.   The only provisions of the constitution in any wise applicable are secs. 31 and 32, art. IV. Sec. 31 provides that the legislature is prohibited from enacting any special or private laws in the following cases:

. . . "7th. For granting corporate powers or privileges, except to cities." . . . "9th. For incorporating any city, town or village, or to amend the charter thereof." Sec. 32 provides:

"The legislature shall provide general laws for the transaction of any business that may be prohibited by section thirty-one of this article, and all such laws shall be uniform in their operation throughout the state."

We see nothing in either of these provisions of the constitution that has been infringed upon by the statutes affecting the incorporation of villages. True, the constitution does indicate that there shall be a village before it is incorporated, and the statutes are to the same effect, so it is argued that the framers of the constitution had in mind the characteristics of the villages and towns as they existed at the time of the framing of the constitution, and as they had existed in the Eastern states where the framers of the constitution had formerly resided.

The constitution was made for an expanding future. The framers of the constitution were optimistic men who had come to the West with full faith in its future development. They could foresee and did foresee a wonderful growth and prosperity for this state. They had seen in their lifetime great changes in the means of transportation, such as steam railroads and steamboat navigation. They had witnessed the development of the telegraph and many modern inventions. In framing the constitution they used general and apt language to include not only the present but the future. The villages of today are unlike the villages of 1848 in many respects. Then a village consisted of a cluster of inhabitants centered around the village store, postoffice, blacksmith shop, and the town pump. Usually a postoffice, a church, and a school house were part of the village. In those days the village store and the blacksmith shop catered to the necessities of the time. Now, however, the automobile

and the interurban trains have revolutionized the methods of securing such necessities and have changed the entire purposes of villages in many instances. The necessities of life may be procured by parcel post, express, or by the use of automobiles. Free delivery may bring the mail to the door. Many villages adjacent or near large cities are built up for the purpose of the convenience and comfort of the residents who are largely business men of a city, who wish to get away from the noise and rush of the city to the quietude of country life. Such in a large measure was the situation of the people who lived in Chenequa. They had built their houses around a charming lake and in a rugged territory that is ideally situated for their comfort and convenience and hardly valuable for any other than residential purposes. What they lacked was police protection. They had no fire protection and no protection for their property or persons. By organizing the village they could secure this protection and the other conveniences that they desired. There is nothing in the constitution nor in the statutes that prevents a construction thereof applicable to this kind of a village. The constitution, while remaining the same, is sufficiently elastic to be applied to the changing conditions of the life and the growth of the state. *Borgnis v. Falk Co.* 147 Wis. 327, 349, 133 N. W. 209.

It is further contended that the area of the village includes land not reasonably appurtenant or necessary for future growth. The trial court found:

"The area sought to be included in the incorporation is appurtenant to and necessary for the future growth and development of the proposed village, and has the distinctive characteristics of a village. The plat is compact, embraces 2,100 acres, and a reference to the topographical map at once convinces one that there is very little agricultural land within the area. The whole area is cursed with high steep hills some forty feet high, or pot-holes or depressions forty feet deep. Not even by the wildest stretch of imagination

could much of this land be called agricultural land, and this court is perfectly familiar with the area and has been for many years. A mere reference to the map on file in this case showing the timbered area, and which map I find is correct, shows that a very large portion of it is covered by a very heavy growth of timber, and that the land upon which the timber is situated is so rough that it is impossible to term it agricultural land.

"It is true that there is some agricultural land on the west and southwest side, but it is far from 1,200 acres as testified to by respondents' witnesses. A reference to the map on file will at once convince any one of that fact. Whatever level land is on the west or southwest side is necessary for the proposed village. Either side is suitable for aeroplane landings or for the building of houses and garages. In five years nearly every one of these villagers will have aeroplanes."

The general rule as to the effect to be given these findings of the trial court is stated in *Will of Heymann*, 190 Wis. 97, 103, 208 N. W. 913: "Upon a disputed question of fact this court will follow the findings of the trial court unless the decided preponderance of the evidence is to the contrary, or unless the trial court has not applied correct rules of law in the reception of evidence." The evidence sufficiently sustains the finding of the trial court, under the rule stated.

This disposes of all the questions of importance raised on this appeal. The orders of the trial court must be sustained.

*By the Court.*—Orders affirmed.

ESCHWEILER, J., took no part.