In re Incorporation of the Village of St. Francis: Ascherin and others, Appellants, vs. City of Milwaukee and others, Respondents.

*November 12—December 6, 1932.*

648

*George H. Gabel* of Milwaukee, for the appellants.

For the respondents there was a brief by *Max Raskin,* city attorney, and *Mark A. Kline,* assistant city attorney, for the city of Milwaukee, and *Howard P. Haberla* of Milwaukee, attorney, and *Mark A. Kline* of counsel, for other objectors, and oral argument by *Mr. Kline.*

FAIRCHILD, J.    The objections to the petition of the applicants for incorporation raise issues of fact which are for judicial determination.    The result of the inquiry must depend upon the surroundings, occupations of the residents, the location of the territory, and the presence or absence of forces tending to develop and affect the prospects of the proposed village.    From the evidence offered in support of and in opposition to the application the court is required to

find whether or not those marks or signs fixed by the legislature, as indicating a condition of territory and habitation fit for incorporation into a village, exist. When the conclusion is reached by the trial court it must be accepted unless it is against the great weight and clear preponderance of the evidence, or a mistake has been made in applying the law to the facts.

The question at the bottom of the controversy may be said to be, Has the territory which the applicants describe in their petition the necessary characteristics to entitle it to be incorporated as a village? They attached to their petition a survey, map, and an accurate census of the territory according to the provisions of secs. 61.01 to 61.14, Stats., and offered evidence in support of their claims. This evidence has considerable convincing power, but considered under the advantage of a personal view of the *locus in quo* by the trial court it failed to carry sufficient conviction to gain a favorable determination for the applicants. In the record, observations by the learned trial judge occur which seem to question the wisdom of the plan to incorporate, and appellant urges that the trial court's misconstruction of his functions "is evidenced by his effort to convince witnesses that the incorporation was not desirable." But a review of the entire record, including the statements and question by the trial court referred to, indicates that the trial judge considered the evidence with a correct understanding of the law in mind. His findings to the effect that the territory within the proposed village is largely rural in character seem to be amply sustained by the testimony of witnesses, surveys, and the testimony relating to the undeveloped and neglected condition of platted portions. The platted property in this territory amounts to approximately 378 acres, but this includes all of the platted property whether improved or not. There appear to be upwards of 302 acres held as industrial property, a considerable portion of which, if in

use at all, is used for agricultural purposes, and some 399.56 acres of agricultural lands and home sites.

The foregoing classification was made by one of the engineers for applicants, who, on cross-examination, stated: "When I state there are 378 acres of platted and improved property I do not wish to indicate that it is all improved property. I just wish to indicate it was serviceable for home sites, smaller divisions. . . . There is included, therefore, in the 378 acres this Harbor View plat. There is not a single building on that. There are no roads leading there. It is entirely in its natural state."

There is further testimony by the same witness to the effect that there is considerable non-urban property in the proposed village. Testimony of a similar nature is found in cross-examination of applicants' witnesses and in the direct examination of objectors' witnesses, the objectors' witnesses rather increasing the percentage of rural or non-urban lands over the estimate which comes from the applicants.

The highways have, perhaps, influenced the people living in the different sections to form their associations with those to the north and the south rather than with those to the east or west; and the proximity of a large city on the north and a growing industrial city on the south may explain the belated transition of the property from rural to urban or semi-urban. The lack of opportunity for communication and community exchange between the eastern and western portions of the area and between those living in the center with those on either side, impressed the trial court; and so far as the roads or highways are concerned the opportunity is limited. This division may account for the clusters of houses disconnected and distant from each other and for the failure here of a community interest and the distinctive characteristics of a village. A planned development may become a village, but the necessary elements are not always to be

found when an effort is made to segregate a portion of an old community or political unit. As a part of the old it may serve one purpose and fit in harmoniously with the existing scheme of government, while as a separate and distinct unit it may not possess the qualifying characteristics for the changed purpose. The forming of territory lacking in the characteristics referred to into a village would be bringing into the lives of those living there a new association and an unexpected and perhaps an unnatural allegiance. The ultimate destiny of this territory, or portions of it, may be read in the possible growth of larger communities near by; but to force either village incorporation or annexation before the prescribed conditions necessary therefor exist is not conforming to the legislative plan provided for such matters. As to incorporation it would violate the rule that territory proposed to be incorporated "as a village must be harmonious with the idea of what a village actually is." *State ex rel. Holland v. Lammers,* 113 Wis. 398, 86 N. W. 677, 89 N. W. 501. The case *In re Chenequa Village,* 197 Wis. 163, 221 N. W. 856, while apparently broadening the old rule, did nevertheless recognize it and adhere to it, and applying it to a state of facts where a group of people in a given territory had a common interest which induced in a natural way communication and exchange between them for a community purpose; not only the friendly intimacies of a neighborhood but the more positive and easily recognized interdependence which usually characterizes village life. There the situation was such that in order to gain their common end they were forced to rely upon each other and on a combination of all.

In this case the benefit which the applicants urge as the loadstone to draw together the interests of the community and eventually create the characteristics of a village do not exist under circumstances entitling it to the weight given to it in the *Chenequa Case.* The learned trial judge was of

the opinion that the lines of communication established between the people in different sections of the proposed village were such as to affect or restrict their interests and their property development so as to make impractical a relation or association east and west, and that the desire for water could be satisfied more readily by each group's working with the town of which they were a natural and integral part. He attached considerable importance no doubt to the recent legislation which eliminates many differences between the powers exercised by towns and those exercised by villages, and grants village powers to towns having a certain population.

The conclusion of the trial court that the provisions of law and the rules which govern the creation of a village by incorporation require the presence of the distinctive characteristics of a village before the step can be taken, is sound and its findings of fact that these do not appear in this instance must be sustained.

The trial court correctly ruled that the city of Milwaukee was not a proper party to these proceedings and may not be heard as an objector. The city's claim to a right to be heard is based on a proceeding attempting to annex a part of the proposed village territory to the city of Milwaukee, which proceeding had been begun prior to the application to incorporate the proposed village. The petition in that annexation proceeding was signed only by the city, which, by reason of the location of one of its parks, was the owner of one-half of the property in the territory proposed to be annexed, there being no residents within the district. The authorization for annexation proceedings by the city is found in sec. 926—2 of the Statutes of 1898:

"Territory lying adjacent to any city so incorporated may be annexed to such city in the manner provided by sections 925—17 to 925—21 inclusive; provided, that the petition required by section 925—18 shall be sufficient for the purposes therein mentioned if signed by one-half of the

resident electors and the owners of one-half of the real estate within the limits of the territory proposed to be annexed."

Supported by the case of *Coughran v. Huron,* 17 S. Dak. 271, 96 N. W. 92, the counsel for the city argue that where there are no resident electors in the territory to be annexed the petition is sufficient if signed by the owners of one-half of the real estate. But prior to the enactment of the section under which Milwaukee proceeded, a city organized under a special charter was without the power of annexation, and when the legislature extended the right to begin proceedings of this character it limited the right by the provisions found in sections referred to. Such a city was to have the advantage of acting upon a petition signed by one-half of the resident electors instead of three-fourths. There is provision in sec. 925—18 for a situation in which there are no electors residing within the district, that in that event such petition must be signed by the owners of at least three-fourths of the taxable property desired to be annexed before the council shall have power to act thereon. The construction of sec. 926—2, considering the history of the legislation, is a declaration that territory cannot be annexed unless the city can comply with the requirements therein set forth. *Zweifel v. Milwaukee,* 185 Wis. 625, 201 N. W. 385, and 188 Wis. 358, 206 N. W. 215. While it is unnecessary to determine in this case what might have been the result had the city secured the signatures of the owners of three-fourths of the taxable property, it seems that the legislature in writing this law had these different situations in mind and did not intend to permit the city to proceed on a petition signed by one-half the owners and by no electors, hence the annexation proceeding on which they based their claim of right to be made parties to the incorporation proceedings was void on its face.

It is unnecessary to consider other questions raised.

*By the Court.*—Order affirmed.