In re Incorporation of Village of Twin Lakes: Buschman and others, Respondents, vs. Zerfas and others, Appellants.

*December 8, 1937—January 11, 1938.*

506

The cause was submitted for the appellants on the brief of *Ruetz & Ruetz* of Kenosha, and for the respondents on that of *Erik Hansen* of Silver Lake and *Chester D. Richardson* of Kenosha.

FOWLER, J. The appellants assign as error, (1) the refusal of the referee, upon the hearing before him to determine the sufficiency of the objecting petitions, to receive and consider the objecting petitions signed after the order of reference was made; and (2) that the evidence before the referee on the hearing upon the "whole issue" was insufficient to sustain his findings of fact upon that issue.

(1) Sub. (1) of the statute, sec. 61.07, reads as follows:

"If prior to the date set for a hearing upon such application there is filed with the court a petition protesting against the incorporation of such village, the court shall deny the application, after satisfying itself that such petition has been signed by a majority of the freeholders and the owners of more than one-half of the property by assessed value in the territory proposed to be incorporated; providing, however, that this section shall not apply to counties having a population of two hundred fifty thousand or over."

Sec. 61.04, Stats., provides that "the intending applicants shall give notice that they will apply on some day therein specified to the circuit court . . . for an order incorporating" the proposed village. This notice must be published in a newspaper or posted at least six weeks before the time so specified in such notice. Sec. 61.05. The petition "shall be presented at the time specified" in such notice "or as soon

thereafter as the applicants can be conveniently heard in respect thereto." Sec. 61.06.

The contentions of the parties under heading (1) above hinge upon the interpretation to be given to the phrase of sub. (1) of sec. 61.07, Stats., "the date set for a hearing." In considering this meaning it is of note that six weeks' notice by posting or publishing has been given prior to the time when the petition may be presented to the court. This would seem to be ample time for the circulating of objecting petitions.

The time set by the notice for presentation of the petition for incorporation in the instant case was April 29, 1935. From a recital in the report of the referee as to the sufficiency of the objecting petitions, it appears that by agreement of counsel the hearing before the referee upon that reference commenced on June 5, 1935, continued on June 6th, and was then adjourned to June 21st, when it was concluded. At the commencement of this hearing objection was made by the applicants for incorporation to consideration of two groups of objecting petitions, one filed in court on April 29, 1935, at 4:57 p. m., and the other on May 13, 1935, on the ground that they were not timely filed, "a hearing having been held on the afternoon of April 29, 1935." It also appears that a hearing was held before the court on May 13, 1935. We infer that May 13, 1935, was considered by the court and referee as "the date set" for the hearing of the objecting petitions. The objection to the receipt of these petitions was overruled, and they were included among the objecting petitions considered by the referee.

Other objecting petitions, referred to as "Group 11," were presented to the referee and their consideration refused on objection of the applicants. The referee determined in the language of sec. 61.07 (1), Stats., that the objecting petitions considered did not contain the names of "a majority

of the freeholders and owners of more than one-half of the property by assessed value in the territory proposed to be incorporated." There is nothing of record to indicate that the determination of the referee above quoted is incorrect, if the rejected objecting petitions were properly rejected.

The appellants' assignment of error (1) is stated as follows:

"That the court erred in refusing to receive the additional protesting petitions filed by the objectors upon the trial under section 61.07 (2) showing that more than one-half of the owners and owning more than one-half of the property by assessed value objected to the incorporation."

We understand appellants' contention under this assignment to be that if objecting petitions presented any time before the final order of incorporation is made show that a "majority of the freeholders and owners of more than one-half of the property by assessed value in the territory proposed to be incorporated object to the incorporation," incorporation must be denied, and that petitions so filed show that such majority so owning were so presented. We find a list of objecting petitions bearing dates from May 22d to as late as August 3, 1935, and others not dated at all. We infer that it is claimed that all these should be considered to make up the majority and assessed value requisite for dismissal. With this we cannot agree. We do not find the "Group 11," referred to above, segregated in the record, and the record offers no means of determining what "Group 11" consisted of, or whether with that group the required majority owning more than one half of the property within the district object to the incorporation. But whatever "Group 11" consisted of, we are of the opinion that the referee and the trial court properly rejected all objecting petitions filed or presented after May 13th, when the court "heard" the application for incorporation. Whether, to be considered, objecting peti-

tions should have been filed before the hearing of April 29th, the date fixed for applying to the court for an order of incorporation, if, as applicants state, a hearing was held on that day, we need not determine. The most liberal construction of the statute permissible would be that if the application for an order of incorporation were not made on the day stated in the notice, but on some later date, and when so presented the court should set a date for hearing of it, any objecting petitions filed on or before that date would be considered. This is the construction given by the referee and by the court in the instant case. In that ruling there certainly was no error prejudicial to the appellants. The "date set for a hearing" means some specific date. Objecting petitions must be "filed with the court" before that day, or at latest on that day, to be entitled to consideration on the issue of the sufficiency of the objecting petitions to require dismissal of the application. Unless petitions so sufficient are so filed the incorporation must depend on the matters considered under heading (2) below treated.

It is urged under heading (1) that sub. (2) of sec. 61.07, Stats., indicates that all objecting petitions shall be considered that are signed and filed at any time before the hearing under sub. (2) is concluded, because it says that all parties for or against the application shall be heard "who shall seasonably appear." We think that this provision does not apply to objecting petitions, but only to persons objecting to the incorporation and persons in favor of it who shall attend the hearing and wish to be heard. The persons who merely signed the rejected objecting petitions did not so attend. No one present was refused a hearing. The court expressed the view that sub. (2) only covered persons who personally appeared to give testimony. This was perhaps too restricted a view. It may be that an interested person who was not personally present might appear by attorney and object to the incorporation even though he offered no testimony. But the

record is silent as to rejection of any such evidence or argument so offered. All persons wishing to testify were heard, and apparently all counsel who wished to argue the matter were heard. The hearing under sub. (2) had nothing to do with sufficiency of petitions. That matter had been determined by the hearing under sub. (1). The only issue at the hearing under sub. (2) was whether the facts shown brought the proposed territory within the definition of a village under the decisions construing the incorporation statutes.

It is also urged that the provision of sub. (1) of sec. 61.07, Stats., as to time of filing objection petitions is directory merely within the ruling in *Application of Clark,* 135 Wis. 437, 444, 115 N. W. 387, which held that the provision of sec. 61.09, Stats., that an election shall be held within sixty days is directory "as to the time for holding the election." The facts of that case were that a *certiorari* action stayed an election pursuant to the order for incorporation beyond the sixty-day period for holding the election, and the election was held after the determination of the *certiorari* action. The court considered that as the purpose of the election was as well satisfied by an election after the sixty days as before, the provision for an election within sixty days should be held directory. To hold otherwise would enable the persons designated to hold the election and fix the time for holding it to defeat incorporation by refusing to set the time therefor. Action to compel them to set the time and publish the notice therefor could not be brought until after the time for so doing had expired, and thus action could not be compelled within the sixty days. The sixty-day provision could not be construed to have intended such result. To permit it to be so construed would defeat the whole purpose of the incorporation statutes. The cases cited in the opinion in the *Clark Case, supra,* in support of the ruling stated, except one, all involve cases of some public officer failing to give a notice within a time fixed by statute or failing to perform some

designated duty within a time fixed by statute. The case above noted as excepted involves failure of a public officer to make entries in a book that a statute directed him to make, and holds that his failure to perform the duty cannot affect the rights of one whose own acts brought him within the protection of the statute containing the provision for making the entries omitted. No failure of a public officer is here involved. The only failure involved is the failure of the objecting landowners to bring themselves within the provision of the statute requiring the filing of the objecting petitions by a day certain. The legislature could make such provision as it saw fit prescribing the acts of landowners necessary to effectuate their protests. Every statute fixing a time at which an act shall be done cannot be held directory merely because it may be thought by the court that the act might just as well be done later. Take the appeal statutes, for example. Unless the right of appeal given by the legislature is exercised within the ·time specified by the legislature it is lost. *Stevens v. Jacobs, ante,* p. 198, 275 N. W. 555, 276 N. W. 638. So here. If the right given by the legislature to objecting petitioners to defeat incorporation is not exercised within the time specified, why should the failure to act timely not defeat the right just as the right of appeal is defeated by failure to exercise it within the given time? A sound reason for requiring the protesting petitions to be filed before the hearing begins to determine the sufficiency of the objecting petitions is readily perceivable by anyone who as judge or counsel has gone through a proceeding to change a county seat or establish a drainage district, wherein under the statutes governing such proceedings the right to file or withdraw from petitions does not end until the last minute of the proceedings to determine their sufficiency. See *State ex rel. Hawley v. Board of Supervisors,* 88 Wis. 355, 60 N. W. 266; *La Londe v. Board of Supervisors,* 80 Wis. 380, 49 N. W. 960; *In re Catfish River Drainage District,* 176 Wis. 607, 187 N. W. 673;

*Cash v. Kruschke,* 134 Wis. 130, 113 N. W. 675. The difficulties and the vexations incident to such unlimited rights to file petitions must perhaps be experienced to be fully appreciated, but that they are grievous has been demonstrated to the writer of this opinion.

(2) The claim of error to be considered under this head is stated in appellants' brief as follows:

"That there is no credible evidence to sustain the referee's finding that the agricultural lands included within the boundaries of the proposed village are not disproportionate to the size of the area which is already developed and are necessary for the future growth and development of the village and for a proper enjoyment and control of the roads forming a part of the boundaries, and for the purpose of enabling the village through its constituted authorities to protect the welfare and investment of the persons who have already purchased and developed permanent homes or summer residences in the area immediately surrounding both lakes, by controlling the platting of lands immediately surrounding the already developed area and preventing its being platted into subdivisions containing large numbers of small, cheap lots to be sold without adequate restrictions, and the court erred in sustaining said finding."

The evidence on which the finding referred to was based shows a factual situation very like that involved in *In re Village of Chenequa, supra.* The referee expressly stated in his "conclusions of law" that his decision was "governed by" the decision in that case. The size of the two villages is about the same, and the contours of their limits are not materially unlike. Chenequa has one lake within its limits; Twin Lakes has two, connected by a watercourse, of aggregate size not much if any larger than the one in Chenequa. Both proposed villages had inadequate police protection, and the securing of proper police protection was given as one of the reasons for incorporation in both cases. The residences within the village limits in both cases were largely occupied during the summer season only, those in Twin Lakes being

mostly "summer cottages" located on small "lots," while those in Chenequa were of more substantial construction, were suitable for year-round occupation, and occupied tracts of considerable size. The total areas of the two tracts, exclusive of that covered by water, is: Chenequa two thousand one hundred twenty-five acres; Twin Lakes two thousand five hundred ninety acres; and the respective amounts of farm lands one thousand three hundred and one thousand five hundred eighty-two acres. Much of the land adjoining the lakes in Twin Lakes has been platted into small lots, and considerable more is adapted to such platting and sale for summer-cottage purposes. None was platted in Chenequa. Twin Lakes has a population of about four hundred permanent residents, Chenequa had about two hundred. There are six hundred ninety buildings in Twin Lakes, one hundred seventy-five are year-round residences, and four hundred sixty-six "summer cottages." The summer population of Twin Lakes is estimated by witnesses from two thousand to ten thousand, and the referee considered it as approximately four thousand. There are clusters of cottages at several points on the lakes. There are two summer hotels serving transients. There are twenty-one taverns within the limits of the proposed village, and a public bathing beach adjacent to a public highway where two thousand to three thousand people sometimes collect. There is inadequate traffic regulation, and the roads within the territory have not been kept in proper condition by the town within which the village is located. The town government is conducted without consideration of the welfare of the inhabitants of the territory within the village. The cottages are fairly continuous for the greater part of the lake shores. The facts above stated are for the most part not in dispute, and where disputed the evidence supports a finding of their existence.

The above statement indicates more reason for incorporation than the record showed in the *Chenequa Case,* and

amply supports the finding of the referee objected to by the appellants' assignment of error above quoted. It is objected that the territory embraced does not have the characteristics of a village, as is required according to the decisions in *State ex rel. Holland v. Lammers,* 113 Wis. 398, 86 N. W. 677, 89 N. W. 501; *In re Incorporation of Village of St. Francis,* 209 Wis. 645, 245 N. W. 840; and in *Fenton v. Ryan,* 140 Wis. 353, 122 N. W. 756. Perhaps it does not as those characteristics are stated in the *Lammers Case,* but it does have them as they are broadened by the opinion in the *Chenequa Case.* As pointed out in the *St. Francis Case, supra,* the *Chenequa Case* considerably broadens the definitions of village characteristics necessary for incorporation as previously defined. The opinion in the *Chenequa Case* gives the reasons for such extension of previous definitions as that case made, and we are not disposed to depart from its ruling.

*By the Court.*—The order of the circuit court is affirmed.