In re Incorporation of Village of Elmwood Park: Dremel and others, Appellants, v. L. L. Freeman, Inc., Respondent.*

*February 4—March 8, 1960.*

* Motion for rehearing denied, with $25 costs, on May 3, 1960.

For the appellants there were briefs by *Edward J. Kilmurry*, attorney, and *Brach, Edwards & Wheeler* of counsel, all of Racine, and oral argument by *Mr. G. E. Brach, Mr. Fred W. Wheeler*, and *Mr. Kilmurry*.

For the respondent there was a brief by *La France, Thompson, Greenquist, Evans & Dye* of Racine, and oral argument by *Kenneth L. Greenquist*.

BROADFOOT, J. L. L. Freeman, Inc., the objector, is the owner of approximately 17 acres of land within the area proposed to be incorporated. The tract is unimproved, without any residences or other structures thereon and is unplatted. At present this land is not used for any purpose. The tract is 1,270 feet long north and south, with a varying width east and west. The land is bounded on the north by an orphan asylum, which is in the city of Racine, on the east by the right of way of the Chicago, North Shore & Milwaukee Railroad, on the south by a game preserve and fish hatchery and some residential land, and on the west by the platted portion of the area sought to be incorporated.

The objector contended before the trial court that inclusion of its land within the village of Elmwood Park, if incorporated, would render the land economically valueless; that said land is not reasonably necessary for the future growth or development of the proposed village; that said lands do not reasonably possess any natural connection with or adaptability to the purposes of the proposed village; and that the area within the proposed boundaries of the village does not constitute a village in fact.

The objector presented testimony indicating that its land is low and swampy and that residences built thereon could not be serviced by septic tanks. The residences in the balance of the area proposed to be incorporated are so serviced. The objector also presented testimony that

the cost of constructing a sewer system with a sewage-disposal plant for the proposed village would be prohibitive. Mr. Freeman testified that he has been the major developer of the entire area and, among other properties, had platted the major part of the proposed village. He had prepared a master plan for the entire area which included the 17 acres. He had caused three surveys to be made of the 17 acres, each of which shows a possible plat layout therefor. At the time of the hearing one of said surveys was the plan he proposed to follow. This would divide the area into 39 building lots with the necessary roads or streets. None of the surveys of the objector's lands showed any street outlets to the north, east, or south, but showed proposed streets leading through the platted portion of the area proposed to be incorporated. It is his hope that objector's 17 acres can be annexed to the city of Racine or that the city will extend sewer service thereto. He testified that he had made several unsuccessful attempts to secure sewer service from the city of Racine since 1935.

On the basis of the testimony presented by the petitioners the trial court found that they had complied with the provisions of sec. 61.02, Stats. The trial court also determined that, except for the inclusion of the land belonging to the objector, the proposed village is a village in fact. On the basis of the testimony produced by the objector, the trial court found that the 17-acre area is low and swampy and septic tanks would be inadvisable and that the use of septic tanks thereon would create a menace to public health. Also, that the market value of the land belonging to the objector is presently worth $2,000; that if connected to an adequate sewer system its market value would be $51,000; that if platted and subdivided with a sewer system available its market value would be $210,000, less the cost of development of $45,800, or a net market value of $164,200; also, that the cost of constructing a sewer system and sewage-

disposal plant for the proposed village would not be economically feasible. On the basis of those findings the application for the incorporation of the village was denied.

The Wisconsin constitution, as originally adopted, by sec. 3, art. XI, empowered the legislature to provide for the organization of cities and incorporated villages. By an amendment adopted in November, 1924, this language was eliminated and the first clause of the section now reads: "Cities and villages organized pursuant to state law are hereby empowered." The legislature still has the authority to provide for the incorporation of villages by general state law.

The statutes with reference to the incorporation of villages have never contained many standards. Such as are in the statutes deal with the population required for a given area. There are no limitations in the statutes as to the size of the area to be incorporated. Villages were incorporated as a matter of course upon compliance with the statutes until *State ex rel. Holland v. Lammers* (1902), 113 Wis. 398, 86 N. W. 677, 89 N. W. 501, was decided. Upon a motion for rehearing in that case a constitutional question was raised which is stated in the decision as follows (p. 411) :

"A rehearing of this action was granted, and the argument was limited to the question of the constitutionality of sec. 854, Stats. 1898. Under the construction we have given this section, 'any part of any town or towns' not less than one-half square mile in area, not included in any village, lying all in the same county, and having a resident population of not less than 300 persons thereon, may become incorporated. The law, as thus construed, is attacked, because sec. 3, art. XI of the constitution, declaring that 'it shall be the duty of the legislature, and they are hereby empowered to provide for the organization of cities and incorporated villages,' taken in connection with sec. 23, art. IV, which provides that 'the legislature shall establish but one system of town and county government, which shall be as nearly

uniform as possible,' prohibits the legislature from enacting a law whereby, without any distinction based on density of population or other substantial basis of classification, the inhabitants of any area may at will remain under town government or come in under village government."

The court also made the following statement (p. 412) :

"We fully concede that if the law, properly construed, permits rural territory, possessing none of the attributes of villages, to change from town to village government at will, it cannot be sustained."

Following a discussion of the characteristics of villages and cities and in order to find the then statutes constitutional, the court assumed that the framers of the constitution had those characteristics in mind and the statutes had to be interpreted accordingly. It was therefore held that the territory seeking incorporation as a village must be harmonious with the idea of what a village actually is and may not include a large area of agricultural lands sparsely settled or widely distributed. Such territory, the court indicated, may include a settled portion having the distinctive characteristics of a village with such additions as have a natural connection with and seem reasonably appurtenant to and necessary for future growth.

Later decisions of this court have followed in general the outline of the characteristics of a village as stated in the *Lammers Case*. In several cases this court has approved the incorporation of villages where the settled portion of the area sought to be incorporated was 50 per cent or less of the total area. *Incorporation of Village of Biron,* 146 Wis. 444, 131 N. W. 829; *In re Village of Chenequa,* 197 Wis. 163, 221 N. W. 856; *In re Incorporation of Village of Twin Lakes,* 226 Wis. 505, 277 N. W. 373.

The statutes contain no standards as to the type of land that may be incorporated as a village nor is there

reference therein to the present use of the land or its potential. Nor does the *Lammers* decision go any further than necessary to answer the constitutional argument and to prevent agricultural lands possessing none of the attributes of villages to change from town to village government at will.

When a petition is presented to a circuit court for the incorporation of an area as a village, the court must first determine that the petitioners have complied with the provisions of the statutes. The court must then determine whether the entire area proposed to be incorporated is a village in fact under the standards prescribed in the *Lammers* and other decisions of this court.

In the present case the court went beyond the standards set by the statutes and by case law interpreting the same, and considered the economic effect of the proposed incorporation upon one property owner. By so doing it engaged in judicial legislation and thus exceeded its authority.

The objector is planning the development of the 17 acres as residential property. There is no claim that it is agricultural land. Its contention is that if its land can be annexed to the city of Racine it will be better off financially than if its land is included in the proposed village. If annexed to the city it hopes to have a connection with the sewer system of the city.

The entire area proposed to be incorporated is zoned for residential purposes by the county zoning ordinance of Racine county, which has been adopted by the town. Because the 17-acre tract is zoned for residential construction, both the petitioners and the objector limited the testimony offered to the possibility or impossibility of developing the same as a residential area. Villages are not limited to residential purposes. Zoning laws may be changed and the area might be developed as a park or for other recreational purposes. The tract has a natural connection with the balance of the area and it is appurtenant thereto. In fact,

the objector concedes that if and when it develops the area ingress and egress would be through the settled portion of the proposed village.

The test of necessity for future growth has been given a liberal construction by this court in its decisions following the *Lammers Case.* The record establishes that the entire area sought to be incorporated has the characteristics of a village and is a village in fact, under the interpretation of the applicable statutes made by this court. Therefore, since the statute has been complied with, the trial court is directed to enter an order of incorporation pursuant to the provisions of sec. 61.08, Stats.

*By the Court.*—Order reversed. Cause remanded with directions to enter an order in conformity with this opinion.

CURRIE, J. (*concurring*). Apparently this is the first time that this court has given recognition to the significance of the 1924 amendment to sec. 3, art. XI of the Wisconsin constitution in so far as its effect upon village and city incorporation proceedings is concerned. As this constitutional provision prior to this amendment was construed by this court in *State ex rel. Holland v. Lammers* (1902), 113 Wis. 398, 86 N. W. 677, 89 N. W. 501, it constituted a limitation on the powers of the legislature to incorporate villages and cities. Such limitation was that an area to be incorporated must have the characteristics of a village, or city, as the framers of our constitution understood such characteristics to be based upon their concepts of the same obtained from their New England and New York backgrounds. However, the 1924 amendment eliminated such limitation and left the inherent power of the legislature to incorporate villages and cities unrestricted except as to a limitation found in some other part of the constitution.

The one remaining limitation upon the legislature's power to incorporate municipalities is that contained in sec. 23,

art. IV, Const., which provides: "The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable." The only limitation imposed by this constitutional provision is that large areas of agricultural lands which are not needed for expansion purposes by the municipality proposed to be incorporated, shall not be included within the boundaries of such municipality. Obviously, such limitation has no application to an area such as respondent's 17-acre tract which is about to be subdivided into building lots and is not devoted to agricultural purposes. Whether such 17 acres will ever be needed for expansion purposes of the village of Elmwood Park is wholly immaterial. This is because it is not agricultural land commonly subjected to town government.

Because of the 1924 amendment to sec. 3, art. XI, Const., a circuit court should never deny an application for incorporation of a village on the ground that it does not possess the characteristics of a village, if the petition meets the population-density requirement of the statute, except upon the sole ground that unneeded agricultural lands have been included within the corporate boundaries. This is because neither the statute enacted by the legislature for the incorporation of villages, nor the constitution, presently provides any other limitation in the nature of "characteristics of a village." Therefore, much of that which was stated by the majority opinion in *In re Village of Oconomowoc Lake* (1955), 270 Wis. 530, 72 N. W. (2d) 544, about "village characteristics" and a "village in fact" has been relegated to repudiated dicta by the court's opinion in the instant appeal.