TOWN OF PLEASANT PRAIRIE, Kenosha County, Wisconsin, and C. Tom Wood, Richard Randall and Thomas Terwall, Petitioners-Appellants,†

v.

DEPARTMENT OF LOCAL AFFAIRS & DEVELOPMENT, Respondent.

Court of Appeals

*No. 81–1118. Submitted on briefs March 1, 1982.— Decided June 11, 1982.*
(Also reported in 322 N.W.2d 486.)

† Petition to review granted.

466

For the petitioners-appellants the cause was submitted on the brief of *Robert D. Sundby* of *DeWitt, Sundby, Huggett & Schumacher, S.C.* of Madison.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, *F. Thomas Creeron, III,* assistant attorney general. Of counsel, *James W. Conway,* city attorney for city of Kenosha.

Before Voss, P.J., Brown and Scott, JJ.

VOSS, P.J.   The Town of Pleasant Prairie (town) appeals from a judgment of the circuit court of Kenosha

county affirming a decision of the Department of Local Affairs and Development (department). That decision dismissed an incorporation petition brought by residents of the town of Pleasant Prairie. On appeal, the town raises three questions:[1] (1) whether the department correctly interpreted the applicable provisions of sec. 66.016 (1), Stats.; (2) whether substantial evidence exists in the record to support the department's conclusion that the town failed to establish the homogeneity and compactness necessary for incorporation under sec. 66.016 (1), Stats., and (3) whether the department could have concluded that the proposed incorporation was not in the public interest because it failed to satisfy the standards of sec. 66.016(2), Stats. We hold that all of these questions must be answered affirmatively. Accordingly, we affirm.

Pleasant Prairie is a town of approximately 23,500 acres or 36 square miles located on the border of the city of Kenosha. On March 21, 1979, residents of the town filed a petition with the circuit court for Kenosha county asking that it be allowed to incorporate as a village. On November 1, 1979, pursuant to sec. 66.014, Stats., the circuit court conducted a hearing to determine if the standards of sec. 66.015, Stats., were met. Prior to the time of that hearing, the city of Kenosha filed a resolution with the circuit court indicating a willingness to annex the territory designated in the incorporation petition. After the hearing, the circuit court referred the petition to the Department of Local Affairs and Development.[2]

[1] It should be noted that the town alleges twenty-one errors were made by the department. We believe that of these twenty-one alleged errors, the meritorious arguments fit into three categories.

[2] After it had issued a decision in this case, the Department of Local Affairs and Development merged with the Department of Business Development to form the Department of Development. Ch. 361, sec. 5, Laws of 1979.

The department held extensive hearings pursuant to sec. 66.014(9), Stats., to determine whether the requirements of incorporation listed in sec. 66.016, Stats., had been met. The department issued its decision on June 26, 1980, denying the petition for incorporation. Specifically, the department found that the area was not compact or homogeneous as required by sec. 66.016(1)(a), Stats. Additionally, it found that the territory beyond the core area did not have the potential for substantial residential or urban development within the next three years as required by sec. 66.016(1)(b), Stats. Finally, the department found that the incorporation would not be in the public interest as required by sec. 66.016(2), Stats., for two reasons. First, the services provided by the town were not sufficient to meet the needs of the territory. Second, the department was unable to conclude that the incorporation would not substantially hinder the solution of governmental and other problems affecting the metropolitan community.

The town appealed the department's decision to the Kenosha county circuit court. The circuit court affirmed the decision of the department in all respects through a judgment entered May 18, 1981. The town appeals from that judgment.

I.

First, the town contends that the department incorrectly interpreted the requirements of sec. 66.016, Stats. It argues that the department improperly applied the wrong criteria to determine that the town lacked compactness and homogeneity as required by sec. 66.016(1)(a), Stats. Specifically, the town argues that various criteria should not have been considered by the department in reaching its conclusion. Among the criteria which the town claims were improperly considered are:

the intricate boundaries between the city and town, the intermixing of urban and land use, the variation in population densities from one section to another by a factor of ten or more, and the lack of internal orientation by the village residents in their shopping and social customs. We believe these criteria to be proper indicators of a lack of compactness and homogeneity.

At the outset, it must be noted that the interpretation placed upon a statute by an administrative agency charged with the duty of applying such a statute is given great weight. *City of Milwaukee v. Lindner,* 98 Wis. 2d 624, 633–34, 297 N.W.2d 828, 833 (1980). A reviewing court should not substitute its judgment for an agency's application of a particular statute to the found facts if a rational basis exists for an agency's interpretation and that interpretation does not conflict with the legislative intent of the statute, prior case law, or constitutional prohibitions. *Wisconsin's Environmental Decade, Inc. v. Public Service Commission of Wisconsin,* 98 Wis. 2d 682, 694, 298 N.W.2d 205, 209–10 (Ct. App. 1980).

To determine if the agency's interpretation is correct, the reviewing court must consider the purpose of the entire act and consider the statute in relation to its scope, history, context, subject matter and object intended to be accomplished or remedied. *Berns v. Wisconsin Employment Relations Commission,* 99 Wis. 2d 252, 265, 299 N.W.2d 248, 255 (1980).

Section 66.016 (1) (a), Stats., declares:

(a) *Characteristics of territory.* The entire territory of the proposed village or city shall be reasonably homogeneous and compact, taking into consideration natural boundaries, natural drainage basin, soil conditions, present and potential transportation facilities, previous political boundaries, boundaries of school districts, shopping and social customs. An isolated municipality shall have a reasonably developed community center, including

some or all of such features as retail stores, churches, post office, telephone exchange and similar centers of community activity.

The purpose of the incorporation statute was discussed in detail in *Scharping v. Johnson,* 32 Wis. 2d 383, 396–97, 145 N.W.2d 691, 698–99 (1966). There, the supreme court stated:

"The legislature in its 1959 session made substantial changes in the statutory law governing the overall problem of municipal incorporation and urban expansion. A dominant change was a legislative recognition that many localities of the state were experiencing a substantial urban growth and that the existing legislation permitted haphazard, unrealistic, and competitive expansion without regard for present and probable future development in the best overall public interest." *Elmwood Park v. Racine* (1966), 29 Wis. 2d 400, 406, 139 N.W.2d 66.

It was pursuant to this general purpose that the classifications in question were made. The legislative note attached to Assembly Bill No. 226,A., of the 1959 legislative session reads in part:

"Particular attention is devoted to establishing minimum standards which are relevant to the problems presented by governmental organization in metropolitan areas. This bill also recognizes the special problems of rural or 'isolated' areas by providing somewhat different standards for proposed incorporations in such areas." (p. 1)

"The impact of an incorporation on a metropolitan community must also be considered. To prevent fragmentation of an urban area the director is required to make 'an express finding that the proposed incorporation will not substantially hinder the solution of governmental problems affecting the metropolitan community' of which the territory is a part." (p. 2)

Thus, it was apparent that the classifications in question followed from a legislative determination that the problems of the metropolitan community and the isolated community were different and required different treatment. The reason for the exact difference in treatment effected appears on page 13 of this legislative note:

"For each of the types of municipalities defined in s. 66.013(2) different minimums are established. The minimums vary according to the proximity of the proposed incorporation to a metropolitan center. The requirements for creation of a village or city near a metropolitan community are more stringent to avoid the creation of governmental units without sufficient area or population to economically supply services or perform functions which are needed."

Section 66.016(1)(a), Stats., suggests certain criteria to be used to determine whether the proposed village or city is reasonably homogeneous and compact. However, the language of the statute does not indicate that these are the exclusive factors which may be considered. In fact, case law holds that other factors may be considered.

In *In re Village of Elmwood Park*, 9 Wis. 2d 592, 600, 101 N.W.2d 659, 663 (1966) (Currie, J., concurring), Justice Currie noted that large areas of agricultural lands not needed for expansion of a proposed municipality should not be included within the boundaries of the municipality. *See also In re Incorporation of Village of St. Francis*, 209 Wis. 645, 651–52, 245 N.W. 840, 842–43 (1930). The principle that the agricultural land must be reasonably necessary to the development of the municipality is reaffirmed in sec. 66.016(1)(b), Stats., which declares, in pertinent part, that: "The territory beyond the most densely populated square mile as specified in sec. 66.015(3) or (4) shall have potential for residential *or other urban land use development on a substantial scale within the next 3 years.*" (Emphasis added.) Consequently, consideration of the amount of agricultural land contained in the proposed village was appropriate to determine whether or not it was homogeneous and compact.

The town's argument that the department should not have considered variations in population from one section to another is not supported by case law. In *Scharp-*

*ing v. Johnson,* 32 Wis. 2d at 392, 145 N.W.2d at 696, our supreme court found that homogeneity did not exist if there was a wide disparity in population between sections.[3] In that case, the disparity of population among the sections ranged from 29 to 298. *Id.* In *Scharping,* the proposed village was seeking incorporation as an isolated municipality. Even under the less rigorous incorporation standards applied to isolated municipalities, *Scharping,* 32 Wis. 2d at 397, 145 N.W.2d at 699, such a disparity prevented a finding of homogeneity.

The town also argues that lack of internal orientation also should not have been considered in determining whether homogeneity and compactness existed. However, such a consideration is specifically expressed in the statute. Section 66.016(1)(a), Stats., declares that boundaries of the school districts as well as shopping and social customs should be considered in making a finding on the issues of compactness and homogeneity.

Finally, the town argues that the court should not have considered the town's intricate boundaries as a factor used to determine whether homogeneity and compactness exist. The department's decision indicates an awareness of the irregular boundary with Kenosha and the problems this occasionally created in providing services. The department also indicated that allowing incorporation would make this problem a permanent one. However, the department did not indicate that this was a factor in reaching its decision finding neither homogeneity nor

[3] The town attempts to distinguish *Scharping v. Johnson* from this case by emphasizing that *Scharping* involved an isolated municipality seeking incorporation. In this case, the town seeks incorporation as a metropolitan village. A large disparity in the population of sections or quarter sections within the area seeking incorporation indicates a lack of homogeneity regardless of how the area seeks incorporation.

compactness.[4] Since there is no showing that the department considered this to be a factor in reaching its decision, we will not speculate on the issue here.

The town also disputes the department's interpretation of sec. 66.016(1)(b), Stats.[5] It contends that the de-

[4] In the final paragraph of the portion of the decision which considers sec. 66.016(1)(a), Stats., the department stated:

On the basis of the preceding considerations, it is concluded that, *although its external boundaries are compact*, Pleasant Prairie's patterns of land uses, urban development, transportation facilities, population distribution, and shopping and social customs are neither compact nor homogenous as required by the statute. [Emphasis added.]

In another portion of its decision, the department expressed a concern about the irregular boundaries, but it did not indicate that this prevented a finding of compactness. It stated:

From the standpoint of previous political boundaries, the territory may be considered reasonably compact. With the exception of lands in the northeast corner annexed to the City of Kenosha, Pleasant Prairie has maintained its original boundaries. The common boundary with the city is quite intricate. The intricate boundary has created some problems in providing governmental services and some confusion, especially for newcomers and strangers, over which government has jurisdiction in any given area. This intricate boundary is the cumulative result of hundreds of decisions by individual property owners about where they want to live. Incorporation of Pleasant Prairie would make permanent the intricate boundary and the attendant problems.

[5] Section 66.016(1)(b), Stats., declares:

(b) *Territory beyond the core.* The territory beyond the most densely populated one-half square mile specified in s. 66.015(1) or the most densely populated square mile specified in s. 66.015(2) shall have an average of more than 30 housing units per quarter section or an assessed value, as defined in s. 66.021(1)(b) for real estate tax purposes, more than 25% of which is attributable to existing or potential mercantile, manufacturing or public utility uses. The territory beyond the most densely populated square mile as specified in s. 66.015(3) or (4) shall have the potential for residential or other urban land use development on a substantial scale within the next 3 years. The department

partment erred as a matter of law in determining that substantial development must occur in the area beyond the core within three years. It argues that the mere potential for development, even though the potential may not be imminent, is sufficient. Also, it objects to the department's interpretation of "substantial development" as meaning development of twenty-five percent of the land beyond the core area. Finally, it contends that the department erred as a matter of law in excluding area which has already been developed from being considered as part of the land beyond the core which must be developed. We cannot agree with the town's arguments.

The primary source for the construction of the statute is the language of the statute itself. *Milwaukee County v. Proegler,* 95 Wis. 2d 614, 625, 291 N.W.2d 608, 613 (Ct. App. 1980). When the statutory language is clear and unambiguous, we arrive at the intention of the legislature by giving the terms their ordinary and accepted meaning. *Kearney & Trecker Corp. v. Wisconsin Department of Revenue,* 91 Wis. 2d 746, 753, 284 N.W.2d 61, 64 (1979).

The town's arguments all center on a single sentence in sec. 66.016(1)(b), Stats., which declares: "The territory beyond the most densely populated square mile as specified in s. 66.015(3) or (4) shall have the potential for residential or other urban land use development on a substantial scale within the next 3 years." The statute expresses three distinct ideas: the kind of development, the time frame in which the development is capable of taking place, and the amount of development.

The first two ideas, the kind of development and the time frame in which the development is capable of taking place, are unambiguous. The kind of development, as the statute clearly indicates, is potential development.

may waive these requirements to the extent that water, terrain or geography prevents such development.

That is, development which has not yet taken place. The time frame in which the development must be capable of taking place is "within the next three years." Because this is clear from the plain language of the statute, it is not necessary to go beyond the statute to construe the legislative intent on these two points.

The third idea, the amount of potential development which must be capable of taking place within the required three years, is not obvious from the statute. The statute only requires "substantial" development. Ambiguity exists when a statute is capable of being understood by a reasonably well-informed person in two or more different manners. *Kearney,* 91 Wis. 2d at 753–54, 284 N.W.2d at 65. This is true here because the meaning of "substantial" in the context of the statute is not readily apparent.

In reviewing an administrative agency's interpretation of a statute, several considerations arise.

[T]he general rule in this state is that ". . . the construction and interpretation of a statute adopted by the administrative agency charged by the legislature with the duty of applying it is entitled to great weight." However, as this court has made clear, the rule that great weight is to be given and any rational basis will sustain the practical interpretation of the agency charged with enforcement of a statute ". . . does not apply unless the administrative practice is long continued, substantially uniform and without challenge by governmental authorities and courts." . . . [In such a] situation, we would hold, quoting a very recent case [*Milwaukee v. WERC,* 71 Wis. 2d 709, 714, 239 N.W.2d 63, 66 (1976)], that ". . . this court is not bound by the interpretation given to a statute by an administrative agency. Nevertheless, that interpretation has great bearing on the determination as to what the appropriate construction should be." It is such "great bearing" or "due weight" standard, not the "any rational basis" test, that we find here applicable. [Footnotes omitted.]

*Beloit Education Association v. WERC,* 73 Wis. 2d 43, 67–68, 242 N.W.2d 231, 242–43 (1976). We apply such a standard of review with an awareness that the legislative intent in enacting this statute was to prevent haphazard, unrealistic, and competitive expansion, *Village of Elmwood Park v. Racine,* 29 Wis. 2d 400, 406, 139 N.W.2d 66, 68 (1966). With such considerations in mind, we note that the department considered the word "substantial" to mean twenty-five percent as applied to the area in question. It did not set this to be an absolute standard for all areas; rather, it noted that the definition of "substantial" should vary according to the size of the area beyond the core. This court agrees with the department's standard and believes that such a variable definition would allow meaningful examination of each incorporation petition which would take into account the peculiar differences of each area.

## II.

Second, the town argues that even if the department's interpretation of sec. 66.016(1), Stats., is correct, the findings of fact based on such an interpretation are not supported by credible evidence. Our review of the record shows an abundance of evidence supporting the department's finding that the area seeking incorporation lacked homogeneity and compactness.

In examining questions concerning the sufficiency of evidence, this court is limited in its review.

A court should not upset the findings of an agency on judicial review if they are supported by substantial evidence in the record. A reviewing court should not weigh the evidence or pass on the credibility of witnesses. A reviewing court cannot overturn an agency finding even if it may be against the great weight and clear preponderance of the evidence.

*Omernick v. Department of Natural Resources,* 94 Wis. 2d 309, 311, 287 N.W.2d 841, 843 (Ct. App. 1979), *aff'd,* 100 Wis. 2d 234, 301 N.W.2d 437 (1981) (citations omitted). This court has recently addressed the question of what constitutes "substantial evidence." We stated:

Substantial evidence is not a preponderance of the evidence. The test is rather whether reasonable minds could arrive at the same conclusion reached by the commission. This is not the same as a reviewing court's weighing conflicting credible evidence to determine what shall be believed. The fact that the evidence is in conflict is not a sufficient basis for reversal of the commission.

Further, it is the function of the commission, and not the reviewing court, to determine the credibility of evidence or witnesses and to weigh the evidence. When one or more inferences may be drawn from the evidence, the drawing of one of such permissible inferences by the commission is an act of fact-finding, and the inference is conclusive on the court. [Footnotes omitted.]

*Farmer's Mill of Athens, Inc. v. ILHR Dept.,* 97 Wis. 2d 576, 579–80, 294 N.W.2d 39, 41 (Ct. App. 1980).

Essentially, then, this court is asked to review two questions: (1) whether a reasonable mind could have concluded that the territory was not compact and homogeneous, and (2) whether a reasonable mind could have concluded that the territory beyond the core did not have the potential for development of twenty-five percent of its area within the next three years.

We first consider the issue of homogeneity and compactness. The proposed incorporation covers approximately thirty-six square miles. The road pattern in the area indicates that the town is highly dependent upon the city of Kenosha rather than existing as a separate, independent area. Also, the town is integrated into the Kenosha School District.

Urban and rural land use is haphazardly combined throughout the area. Approximately twenty-five percent

may be categorized as subject to urban use: fifteen percent of the area is residential, two percent is commercial or industrial, and about eight and one-half percent is devoted to transportation, utility, institutional and recreational use. The remaining portions, about seventy-five percent, are rural: twenty-one percent is open land and water, and fifty-three percent is agricultural. Evidence offered indicated that one-half of the area will still be devoted to agriculture in the year 2000. Not even one percent of the total area is devoted to recreational use.

The population density of the area varies significantly from quarter section to quarter section. Thirteen quarter sections have no population at all. In contrast, twenty-two quarter sections have a population in excess of 751 people. Also, thirty-seven quarter sections have a population of between one and ten people.

Finally, testimony offered at the department's hearing indicated that the town is externally oriented in its shopping and social customs. Half of the town's entire work force is employed in Kenosha. Three-fourths of the town's work force is employed outside of the town.

Taken together, we hold that these facts are substantial evidence from which a reasonable mind could conclude that the town lacks homogeneity and compactness.

On the issue of whether or not the town had the potential to develop twenty-five percent of the land beyond the core area within three years, the following facts are pertinent. It is projected that residential population will increase by 234 persons within the next three years. About one hundred acres of land will be needed to accommodate these new residents. This amounts to approximately 0.04 percent of the entire land area. Also, many areas platted for residential development cannot be developed until a sanitary sewer line is installed.

While Wisconsin Electric has constructed a new power plant in Pleasant Prairie, no indication exists that this will lead to increased industrial development. The town has been financially unable to purchase land from individual landowners to develop an industrial park. When they have referred industrial prospects to actual landowners, no evidence indicates that the landowners have been willing to sell. Consequently, the prospect of industrial development is uncertain.

These facts also provide substantial evidence from which a reasonable mind could conclude that substantial development beyond the core area is unlikely within the next three years.

## III.

The final issue raised on appeal is whether the department could have concluded that the proposed incorporation was not in the public interest as required by sec. 66.016(2), Stats. That statute declares:

(2) In addition to complying with each of the applicable standards set forth in sub. (1) and s. 66.015, any proposed incorporation in order to be approved for referendum must be in the public interest as determined by the department upon consideration of the following:

(a) *Tax revenue.* The present and potential sources of tax revenue appear sufficient to defray the anticipated cost of governmental services at a local tax rate which compares favorably with the tax rate in a similar area for the same level of services.

(b) *Level of services.* The level of governmental services desired or needed by the residents of the territory compared to the level of services offered by the proposed village or city and the level available from a contiguous municipality which files a certified copy of a resolution as provided in s. 66.014(6).

(c) *Impact on the remainder of the town.* The impact, financial and otherwise, upon the remainder of the town from which the territory is to be incorporated.

(d) *Impact on the metropolitan community.* The effect upon the future rendering of governmental services both inside the territory proposed for incorporation and elsewhere within the metropolitan community. There shall be an express finding that the proposed incorporation will not substantially hinder the solution of governmental problems affecting the metropolitan community.

On such issues, our standard of review is very limited. Our supreme court has held:

[In] *In re Incorporation of Village of North Milwaukee* (1896), 93 Wis. 616, 624, 67 N.W. 1033, 1036, this court held that it was beyond the judicial power to determine the legislative question of whether the public interest would be promoted by the incorporation of a village. We stated:

"The question as to whether incorporation is for the best interest of the community in any case is emphatically a question of public policy and statecraft, not in any sense a judicial question; and in attempting to submit that question to the decision of the circuit court the legislature has undoubtedly done that which the constitution forbids."

In accordance with that venerable principle, this court's task is confined to applying the strictures of ch. 227, Stats., to the determination of whether the administrative body properly exercised its delegated authority.

*Scharping,* 32 Wis. 2d at 394–95, 145 N.W.2d at 697–98.

Consequently, we need only address whether the procedures used by the department to arrive at its conclusion are improper. Nothing in the record indicates that the department acted improperly in reaching its conclusion that it could not state that "the proposed incorporation will not substantially hinder the solution of governmental problems affecting the metropolitan community" as required by sec. 66.016(2)(d), Stats.

The town argues that the department erred by basing its findings on general treatises and failing to indicate specific bases for its decision. The same argument was propounded in *Westring v. James,* 71 Wis. 2d 462, 471, 238 N.W.2d 695, 700 (1976). There, the supreme court held:

Nor are the findings made by the director under sec. 66.016(2)(d), Stats., deficient. The statute is pecularily worded, in that the incorporation can proceed only if there is a finding that it will *not* substantially hinder the solution of governmental problems. Obviously, this requirement for a finding places a very substantial burden on the proponent of incorporation. The director fulfilled his duty when he stated that, under the record, the express finding required for the incorporation to proceed to referendum could not be made.

The petitioners fault this conclusion, because it is alleged that the director relied on generalized studies that indicated that the incorporation of small areas adjacent to a metropolitan city would hinder the solution of problems that affect a metropolitan community.

While this is in part true, nevertheless, the record shows that the planning director then distilled these generalized propositions and applied them to the specific metropolitan community under consideration. The record shows that the director utilized studies particularly applicable to the area of which Allouez was a part and applied generalized standards specifically to the Allouez situation.

It should be emphasized again that the petitioners had the difficult burden of proving a negative. The use of the generalized studies which the director laid alongside the specific Allouez situation merely demonstrated that the facts were insufficient to make the finding required by the statute.

In this case, the department similarily relies on generalized studies. However, it also points to specific instances which indicate problems the town has created

which prevent effective metropolitan planning. Under *Westring,* this is sufficient.

The decision of the trial court upholding the denial of the incorporation petition by the department is affirmed.

*By the Court.*—Judgment affirmed.