PATTERSON, Justice.
This is an appeal by Vernon O. Rouse and other citizens of the community of Gautier requesting this Court to reverse the decision of the Chancery Court of Jackson County and order that the appellants’ petition for incorporation of the Gautier area be held valid and that a charter of incorporation be directed to issue in accord therewith.
In support of their request for a reversal the appellants contend the trial court erred in denying their petition for incorporation in that the chancellor exercised more than a mere legal discretion in rejecting the petition and such discretion was not conferred upon the chancellor by Mississippi Code 1942 Annotated section 3374-01 et seq. (1956). It is further assigned as error that the opinion of the trial court was contrary to the overwhelming weight of the evidence.
The record reflects that the petitioners below, appellants here, prepared their petition and filed the same in accord with the requirements listed in Mississippi Code 1942 Annotated section 3374-03 (1956). The requisites of the section are:
(1) It shall describe accurately the metes and bounds of the territory proposed to be incorporated and there shall be attached to such petition a map or plat of the boundaries of the proposed municipality.
(2) It shall set forth the corporate name which is desired.
(3) It shall be signed by at least two-thirds of the qualified electors residing in the territory proposed to be incorporated.
(4) It shall set forth the number of inhabitants of such territory.
(5) It shall set forth the assessed valuation of the real property in such territory according to the latest available assessments thereof.
(6) It shall state the aims of the petitioners in seeking said incorporation, and shall set forth the municipal and public services which said municipal corporation proposes to render and the reasons why the public convenience and necessity would be served by the creation of such municipal corporation.
(7) It shall contain a statement of the names of the persons the petitioners desire appointed as officers of the municipality.
(8) It shall be sworn to by one or more of the petitioners.
The petition concluded with a prayer for incorporation as well as for notice to issue to the City of Pascagoula and the City of Moss Point, these municipalities being within three miles of the proposed municipal incorporation, as well as to all interested persons. The City of Moss Point did not respond to the petition. However, the City of Pascagoula, as well as E. C. Harris of the unincorporated territory and others in a capacity similar to his, filed answers contesting the incorporation. The gist of their answers was a denial that two-thirds of the qualified electors residing in the area signed the petition for incorporation. They also denied that the assessed valuation of the real property within the area was in excess of $1,350,000 as alleged. The main thrust of the answers, however, is that the respondents denied the reasonableness of the petitioners’ abilities to perform the salutary proposals alleged in the petition which are required by Mississippi Code 1942 Annotated section 3374-03(6) (1956), including the health and sanitation proposals and police protection. The respondents denied that incorporation would encourage the location of new industry and other businesses in the area and also denied that it is practicable or reasonable for the petitioners to open and maintain streets and alleyways, to install drainage systems, or to build and maintain municipal water and sewerage systems or other public utilities. They averred that the cost of provid *545 ing these services or any of them would be prohibitive for the proposed area of incorporation as it is thinly populated and its expanse prohibits the supplying of public utilities as mentioned since it would not be economically sound.
They also averred by the answer that Jackson County is presently developing a workable program in coordination with other levels of government. The prime function of this program is to arrange long-range plans for the orderly development of the non-city areas of the county, including the proposed area. Specific steps, it was asserted, implementing this program have already been taken as follows:
(a) Adoption of a zoning ordinance.
(b) Establishment of a County Planning Commission.
(c) Drainage of low lands.
(d) Mosquito Control.
(e) Road planning and development.
(f) Establishment of water and sewerage utility districts.
(g) Regular garbage pick-up.
(h) Adoption of Southern Codes for —Electrical, Plumbing, Heating, Fire.
County programs which are already in the planning stage for non-city areas of Jackson County, Mississippi, including the proposed area, include the following:
(a) Subdivision regulations.
(b) Major thoroughfare and road plans.
(c) Completion of comprehensive drainage program.
(d) Bridge replacement and renewal program.
(e) Updating of Zoning Ordinance and adoption of a zoning map.
(f) Highway and road traffic study.
The respondents also denied that the incorporation of the proposed area will serve the public convenience or necessity and that the petition should therefore be rejected.
The area sought to be incorporated is described in general terms as being just west of the West Pascagoula River, its northern boundary being Mary Walker Bayou, its southern boundary the Mississippi Sound and a portion of Graveline Bayou, its western boundary being the east line of Claim Section Sixteen and Claim Section Three and by the Gautier-Van Cleave Road north of Old Highway 90, the area containing approximately 4,000 acres.
The evidence adduced in support of the petition was primarily that of H, C. Mal-chow, a consulting engineer who had made a study of the area and who testified with respect to the proposed municipal government from the adoption of the budget to the bond requirements for the establishment of the water and sewer systems. It was his opinion that the proposals of the petition were reasonable and that they could be funded. Much of his testimony was based upon his thought that the municipality would receive revenue from the state sales tax once it was incorporated and that this aid when coupled with a bond issue, which he thought reasonable, would enable the municipality to begin its functions as a city in a modest way and to expand these functions as the future economic situation would warrant.
There was also the testimony of the county health officer with regard to the public need for a sewerage disposal system since most of the septic tanks in the area do not function properly and are no longer approved by the health department or by the Federal Housing Authority. The testimony of other witnesses for the petitioners was generally directed to the desirability of incorporation and the public need therefor in view of the lamentable condition of the streets and bridges in the community. The need for a fire department was also expressed.
*546 The testimony of the defendants is largely to the contrary. It reflects that the area is more heavily populated in its southern portion adjacent to the Mississippi Sound and in the northern and eastern portions adjacent to Mary Walker Bayou, with large areas of sparse population in between, and that it is bisected by the L & N Railroad. The difficulty resulting therefrom, in the opinion of these witnesses, is that it would be extremely expensive to establish and maintain water and sewerage systems between the several densely populated areas within the 4,000-acre tract. There is also evidence that part of the services proposed by the petitioners is now being furnished by the county, particularly the maintenance of the roads and garbage pickups. The City of Pascagoula introduced evidence to the effect that the existence of several independent municipalities within a small area acts as a deterrent to the attraction of industry.
From this conflicting evidence the chancellor found that the petition was signed by the requisite number of qualified electors of the area and that the petitioners had met the statutory requirements by describing the area to be incorporated and setting forth the services proposed to be rendered, as well as the other statutory requirements. It was his opinion, however, that the evidence failed to show the proposed incorporation to be reasonable and required by public convenience and necessity. The petition was therefore denied.
The appellants state with reference to their first assignment of error that it is not the intention of the appellants to attack the constitutionality of Mississippi Code 1942 Annotated Section 3374-05 (1956), but rather to point out that in conferring upon the chancellor the duty of validating petitions for incorporation, the legislature intended to limit the authority of the chancellor to a mere legal discretion of discerning whether the requirements set forth by the statute as conditions precedent to incorporation had been complied with. They argue that to delegate to the judiciary a greater discretion would be a violation of the edict requiring the separation of the powers of government, Mississippi Constitution Article 1, Section I (1890), since the creation of a municipal corporation is a legislative function and belongs exclusively to it.
In support of this contention the appellants quote from Annotation 69 A.L.R. 266 (1930) as follows:
It may be stated as a general rule, supported by practically all of the cases in which the proposition is considered, that the creation, enlargement, or diminution of political districts or municipal corporations is a legislative function, and that a statute which delegates the performance of this function to the judiciary, and leaves to the discretion of that body the determination of the circumstances which will justify the creation of a district or corporation, or the circumstances which will justify an enlargement or diminution of such a political subdivision, violates the constitutional provision separating the powers of the government into legislative, executive, and judicial departments.
They also cite from 37 Am.Jur. Municipal Corporations section 8 (1941) as follows:
* * * It is generally held that the legislature, in enacting general statutes' governing the incorporation of municipal corporations, which describe the conditions precedent to incorporation, may confer upon a court or other agency the power and duty to ascertain the existence of the facts set forth in the statute upon which it will become effective and to see that all legal forms have been complied with. When such facts are found to exist and the required legal forms have been complied with, the law directs the creation of the municipal corporation. If the legislature vests no power in the courts or other body or individual other than to determine the existence of the facts set forth in the law itself, contingent upon the existence of *547 which the law comes into operation, it does not constitute a delegation of legislative power. * * *
In Ritchie v. City of Brookhaven, 217 Miss. 860, 65 So.2d 436, 832 (1953), a case involving the extension of the corporate limits of a municipality, the rule was firmly established that the determination of the question of public convenience and necessity was not of a judicial nature, that such determination properly belonged to the legislature, and that it was error for the chancery court to exercise this function. It also held that the question of reasonableness of municipal ordinances is one of a judicial nature and that the determination of the reasonableness of such ordinances is the proper exercise of a judicial function, citing Jones v. City of Hattiesburg, 207 Miss. 491, 42 So.2d 717 (1949) and Bradley v. City of Jackson, 153 Miss. 136, 119 So. 811 (1928). We are thus committed to the propositions that the determination of the existence of public convenience and necessity is a legislative func tion and the question of reasonableness is a judicial function. The Court held, however, that a finding of public convenience and necessity was separable from a finding of reasonableness and by applying the device of separation, leaving the first determination to the municipal board and the latter to the court, Mississippi Code 1942 Annotated section 3374-13 (1956), was held to be constitutional. This section states in pertinent part the following: “If the chancellor finds from the evidence presented at such hearing that the proposed enlargement or contraction is reasonable and is required by the public convenience and necessity * * Ritchie has been followed in Smith v. City of Meridian, 237 Miss. 486, 115 So.2d 323 (1959), Harris v. City of Newton, 238 Miss. 405, 117 So.2d 199 (1960), and commented upon due to similarity in Culley v. Pearl River Industrial Comm’n, 234 Miss. 788, 108 So. 2d 390 (1959). These cases are relevant for the establishment of the principle of law above stated, that is, separability. However, each of them has the distinguishing characteristic of there being a board or commission with the authority to determine the existence of public convenience and necessity for the expansion of municipal boundaries or for the creation of a reservoir, whereas, in the present case no such board or commission exists since the petition is for the incorporation of a new municipality. The question is thus left, by whom shall the decision of the existence of public convenience and necessity be made and, if this authority is placed upon the chancellor, can he constitutionally decide the question of public convenience and necessity as well as that of reasonableness?
The authority for and method of incorporation of unincorporated territory is found in Mississippi Code 1942 Annotated section 3374-4)3 et seq. (1956). The directive for the chancellor hearing a petition to incorporate is found in Section 3374-05 as follows:
At the time fixed, the chancellor shall proceed to hear all evidence offered in support of said petition, together with all objections, if any, that may be presented touching or bearing upon the question of whether or not the proposed incorporation is reasonable and is required by the public convenience and necessity. The chancellor shall have the power, however, to grant such reasonable continuances as justice may require. If the chancellor finds from the evidence that the proposed incorporation is reasonable and is required by the public convenience and necessity, then he shall enter a decree declaring such municipal corporation to be created * * *. [If] incorporation is not reasonable and is not required by the public necessity and convenience, then a decree shall be entered denying such incorporation. (Emphasis added.)
The terms of this statute are similar to those in the statute for the extension of a municipal boundary, as in each the chancellor is required to determine whether the *548 incorporation or the extension is reasonable and is required by public convenience and necessity. If by a prudent construction of the statute we can uphold its constitutionality, we should do so. Craig v. Mills, 203 Miss. 692, 33 So.2d 801 (1948); State v. Roell, 192 Miss. 873, 7 So.2d 867 (1942).
The statute relating to the chancellor’s duties upon hearing the petition must be construed in conjunction with those appertaining to the prerequisites of incorporation. It is our opinion that a finding by the chancellor (Section 3374-OS) of the existence of the specified requirements (Section 3374-03) is largely ministerial, affording little, if any, discretion on the part of the chancellor and therefore, does not constitute an unlawful delegation of constitutional powers. A review of the requirements of the last-cited section makes this clear as they relate to such things as mathematical computation, the name proposed for the incorporated municipality, a description of the area, the desire of the petitioners for incorporation, and that the petition be sworn to, all perfunctory. In Culley v. Pearl River Industrial Comm’n, 234 Miss. 788, 809, 108 So.2d 390, 397 (1959) we stated:
The dividing line between a legislative and a judicial act is often imperceptible. Traditionally, the Legislature may delegate to a court the power to determine whether certain facts exist which would warrant creation of the District. The findings of fact are conditions to its creation. The findings required of the chancery court by Sec. 8 are essentially factual in nature, involving, we think, findings of ultimate facts. The statute creates a judicial procedure to determine whether these circumstances and conditions exist. That determination is a function properly exercised by the chancery court. 16 C.J.S. Constitutional Law § 139. Somewhat similar is the action of the chancery court in passing on the validity of an extension of municipal limits.
See also 37 Am.Jur. Municipal Corporations section 8(1941), supra. The function of this determination by the chancellor is the equivalent, in our opinion, of a finding by a board or commission that public need and necessity exists, as we think the legislative intent, in the absence of another body to make such determination, was to place this power within the restricted discretion of the chancellor so that the remaining pertinent statutes of incorporation would be effective. To hold otherwise would leave the statute inoperative and ineffective and surely this was not the intent of the legislature.
We conclude that the commingling of powers in the chancellor, one being ministerial, the other discretionary, does not violate the prohibition against the unlawful delegation of governmental powers. We think, therefore, that that portion of the chancellor’s opinion subsequent to his finding that the statutory requirements had been met and wherein he stated that the evidence failed to show public convenience and necessity is inconsistent with the former, is surplusage insufficient to overturn the former determination of statutory fulfillment. The two determinations are severable, as we have held, one being a ministerial finding of statutory facts, the other an adjudication of reasonableness requiring much discretion. It is our opinion the first assignment of error is not persuasive.
The question remains whether the chancellor’s opinion that the proposed incorporation was unreasonable is supported by the evidence. As mentioned, we have considered the entirety of the record. There is a conflict of evidence and opinions as to whether the community of Gautier should be incorporated. The chancellor found that the proposals set out in the petition were unreasonable and not capable of being carried out in fact. We cannot state from the evidence adduced that he was manifestly wrong. Sims v. Sims, 203 So.2d 804 (Miss.1967) and Rainey v. Rain- *549 ey, 205 So.2d 514 (Miss.1967). Accordingly, the decree denying the incorporation is affirmed.
Affirmed.
ETHRIDGE, C. J., and JONES, IN-ZER, and ROBERTSON, JJ., concur.