This appeal is from a decree of the Chancery Court of Rankin County, Mississippi, which dismissed the petition filed by certain citizens of Rankin County (Incorporators) seeking to incorporate the community known as Pearl into a municipality proposed to be named the City of Pearl. This is the third appearance of the case in this Court. City of Jackson v. Boling,241 So.2d 359 (Miss. 1970); Boling v. City of Jackson,258 So.2d 443 (Miss. 1972). Following the last remand to the trial court, a hearing was had on the merits and the chancellor dismissed the petition. In his opinion he stated that (1) the Incorporators failed to prove the petition was signed by at least two-thirds of the qualified voters residing in the territory proposed to be incorporated, and (2) the proposed incorporation was unreasonable because the cost of operating the proposed municipality would be prohibitive.
The proceedings were brought under the provisions of Mississippi Code 1942 Annotated section 3374-03, which sets out the necessary requirements for the incorporation of a municipality.
The first question is whether the Incorporators met the burden of proving that the petition was signed by two-thirds of the qualified electors residing in the territory proposed to be incorporated. The principal testimony offered by the Incorporators consisted of the testimony of James E. Netherland and Phillip Warren, Circuit Clerk of Rankin County. Netherland has resided in the Pearl area for about sixteen years, is an accountant, and has been nominated to serve as an alderman if the city is organized. An office was set up of which he was in charge. A map was prepared showing the perimeter of the proposed area and this map, kept in Netherland's office, was used to determine if a person who came in to sign the petition was within or without the boundaries of the proposed city. A listing of the rural box numbers was obtained from the post office showing which of the boxes were in the area, and none of the persons living outside of the area were permitted to sign the incorporation petition. The books of registered *Page 592 
voters in each precinct, furnished by the Circuit Clerk of Rankin County, were used in determining who was a registered voter. Using the official records of the circuit clerk's office, the witness determined that there were 4572 qualified electors in the various voting precincts which were entirely or partially included in the proposed area to be incorporated and 591 of the qualified electors lived outside the area, leaving 3981 qualified electors in the area, of which number 2792 of the qualified electors, or more than two-thirds, signed the petition.
Mr. Netherland worked in cooperation with the circuit clerk in checking the records. During the time the people were coming in to sign the petition, Mr. Netherland kept the petition on his person or in his office most of the time. Only one petition was used, the original of which was filed in this cause. He reviewed the petition with the circuit clerk in order to determine that the signers were qualified electors. When Netherland was out of the office, a Mrs. Martin, now deceased, was present, but when Netherland returned to the office he checked those signatures that had been added in his absence so that all signatures were verified as to their qualification. He kept a copy of the poll books prepared by the circuit clerk in his office.
While Mr. Netherland was on cross-examination, the objectors sought to go over the poll books to count those names that were excluded because they lived outside the area in question. Upon objection by Incorporators to making this calculation in detail, the attorney for objectors agreed, in order to save time, to make the count outside the court with the understanding that the witness would be recalled "if we find a discrepancy between his tabulation and what we find." The records were tendered the attorney for Objectors but he did not recall the witness.
The Incorporators had the burden of proving the sufficiency of the petition. Bridges v. City of Biloxi, 250 Miss. 717,168 So.2d 40 (1964).
Before this case came on for hearing on the merits the court ordered the Objectors to file with the court and to mail to the Incorporators the names of all persons appearing on the petition whom the Objectors challenged as not being qualified electors. However, the Objectors did not comply with that decree and did not designate any person or persons whom they claimed were not qualified electors. Nor did the Objectors offer any proof that any of the signatures on the petition were not genuine or were not qualified electors. We hold that the testimony offered by the Incorporators met the burden of proving that the petition contained the signatures of two-thirds of the qualified electors residing in the area proposed to be included in the municipality and that the chancellor's finding to the contrary was manifestly wrong.
The remaining question is whether the chancellor erred in finding that the proposed incorporation was unreasonable because the cost of operating the proposed municipality would be prohibitive.
The area proposed to be incorporated has nearly 15,000 residents, and if incorporation is authorized it will be the sixteenth city in size in the State. The community of Pearl has the largest school in the State. The principal objector, the City of Jackson, lies across Pearl River from the Community of Pearl. The City of Jackson is located in Hinds County and Pearl is located in Rankin County. There is practically no police protection in the Pearl area. There are only three constables and three justices of the peace and six deputy sheriffs for the entire County of Rankin, the result being that there is no concentration of law officers in Pearl. On the average, it takes forty-five minutes to get someone from the Sheriff's office in Brandon. There is a voluntary fire department, but it has not been able to save any house from *Page 593 
burning down, although it has saved houses next door to the fire. Pearl has the highest fire insurance rating in the state. The area is plagued with problems concerning garbage, sewage, and septic tanks. Sewage runs in ditches and in some instances across the yards of residents. A water and sewer company operates in the area but only in certain parts thereof, and some people who have paid deposits have been unable to connect to a sewer. Furthermore, there are no laws to compel the residents to connect. There are no public swimming pools. The area has a drug problem with no agency to deal with it. The area has been determined by the public health authorities to be a health hazard because of the inadequacy of a sewer system. Septic tanks will not work properly because the earth will not absorb the septic tank overflow, and, consequently, flies, vermin and other filth create a health hazard. There is some typhoid in the area which can be carried by septic tank overflow, and the same is true of hepatitis and intestinal infections. The Director of the Hinds and Rankin Counties Health Department Dr. Eric McVey, testified that the Pearl area needs health protection more than any other area in Mississippi; that the sewer system now in operation is available to only about one-third of the community, and not all those in that area are presently hooked up to it.
The individual objectors offered no evidence. The City of Jackson offered testimony that the incorporation was not reasonable and that the area should eventually be annexed to Jackson. It was stated by witnesses on behalf of the City that the City of Jackson could provide the services cheaper than a new municipality. The City also offered testimony by Robert C. Lunardini, a consultant on city planning and engineering, that fifty percent of the population in the Pearl area has lived there less than five years, fourteen percent has lived in the same house for ten years, and that the population is unstable. He also testified that Pearl is best suited as a suburb and about sixty-five percent of its population works in Jackson. He testified that if incorporated, Pearl residents would face an immediate tax increase which would be excessive, and that it is to the best interest of Pearl to remain unincorporated. He said there is little industry in the area in question.
Neither side offered testimony as to the overall cost of the various services proposed to be furnished by the municipality.
Under Mississippi Code 1942 Annotated section 7545-74 (Supp. 1972), the City of Jackson is prohibited by law from annexing the Pearl area except with the consent of the Board of Supervisors of Rankin County. The Rankin County Board of Supervisors has refused such consent and there is no indication that there will be any change on the part of the Board. The record shows without dispute that there is an urgent need for the incorporation of the Pearl area into a municipality so that the community can cope with the problems of police protection, garbage, fire protection, drug control, health hazards, recreation, sanitation, street improvement and zoning. The City of Jackson cannot lawfully incorporate or annex the area. Therefore, we hold that the chancellor was manifestly wrong in holding that the incorporation is unreasonable because of the excessive costs. In our opinion, the law does not require that this large and growing community, beset by so many problems that could be alleviated at least in part within a reasonable time if allowed to incorporate, should be denied the right to incorporate until some indefinite time in the future when it may be annexed by the City of Jackson. Cf.
City of Meridian v. Town of Marion, 255 So.2d 906 (Miss. 1971). Affirmance of the trial court's decree would amount to assigning this large community to limbo without any reasonable opportunity of being able to solve the community problems in the foreseeable future.
It is our opinion the record conclusively shows that the incorporation of Pearl is *Page 594 
required by the public convenience and necessity. The only evidence the trial court had to the contrary was opinion evidence that the City of Jackson could provide municipal services cheaper and that the costs of such services by the new municipality would be excessive. This opinion evidence was not supported by any facts or figures regarding such costs.
The decree of the trial court is reversed and a decree entered here incorporating the area described in the petition into a municipality to be known as the City of Pearl.
Reversed and rendered.
SMITH, SUGG, WALKER and BROOM, JJ., concur.