487 So.2d 196 (1986)
CITY OF PASCAGOULA
v.
William D. SCHEFFLER, Glynn Cox, et al, Petitioners for Incorporation of the City of Gautier, Ms.
No. 55402.
Supreme Court of Mississippi.
March 19, 1986.
Rehearing Denied May 14, 1986.
*197 John G. Corlew, Watkins & Eager, Jackson, Melvin Mitchell, Pascagoula, for appellant.
Robert A. Pritchard, Pritchard & Chapman, Pascagoula, for appellees.
Before WALKER, P.J., and DAN M. LEE and PRATHER, JJ.
PRATHER, Justice, for the Court:
A challenge to the sufficiency of a petition seeking municipal incorporation is the subject of this opinion. A petition filed by area residents for incorporation of the area known as Gautier, was filed in Jackson County Chancery Court. This area was also the subject of an appeal denying incorporation in 1970, Rouse v. City of Pascagoula, 230 So.2d 543 (Miss. 1970).
The incorporation attempt was opposed by the City of Pascagoula, an existing municipality within three miles of the proposed area seeking incorporation. The chancellor found the proposed incorporators had met the jurisdictional statutory requirements, that public convenience and necessity required the proposed incorporation and that incorporation was reasonable.
The City of Pascagoula filed this appeal assigning as error: The lower court erred in not directing a verdict against the petitioners for incorporation because: (1) the petition for incorporation was defective as a matter of law for the petitioners' failure to meet the burden of proving the necessary joinder of two-thirds of the qualified electors residing in the area proposed to be incorporated; (2) findings of public convenience and necessity do not require incorporation; (3) the proposed incorporation is not reasonable; (4) the court erred in accepting petitioners' witness, Steven Wages, as an expert in municipal matters and in allowing that witness to offer opinion testimony outside his discipline.

I.
The petitioners for incorporation of Gautier allege that two-thirds or more of the qualified electors residing within the geographical area sought to be incorporated as a municipality join in this request, and that incorporation is warranted by public convenience and necessity and is reasonable. The area contains approximately twelve (12) square miles and has a population of approximately 10,431. Geographically, the property is separated from Pascagoula on the east by the West Pascagoula River, and is bounded on the south by the Mississippi Sound. Assessed valuation was alleged to be in excess of seventeen million dollars. Services, not provided by other governmental bodies, were sought for the area residents, namely, a fire department, adequate law enforcement, public recreational facilities, and a sewage system. No change in the separate school district was sought. Pascagoula objected to the legal sufficiency of the petition and asserted that area services were adequately provided by Jackson County and other government entities. Additionally, Pascagoula contended that incorporation would deter future development to the area.
Seven individual objectors filed disagreements, and numerous individuals from outside the geographical area testified expressing objection to exclusion of their property from the boundaries.
*198 Other pertinent facts will be enumerated as the assignments of error are addressed.

II.

Did the lower court err in not directing a verdict against the petitioners for incorporation because the petition for incorporation was defective as a matter of law?
Miss. Code Ann. § 21-1-13 (1972)[1] sets forth the statutory requirements for a petition for incorporation. Miss. Code Ann. § 21-1-15 requires that notice be given to (1) "all persons interested in, affected by, or having objections to the proposed incorporation," and to (2) any existing municipality within three miles of the territory proposed to be incorporated. Pascagoula is such an existing municipality. Upon hearing of such a petition after proper notice, the petitioners for incorporation have the burden of proving the sufficiency of this petition. In Re City of Pearls, 279 So.2d 590 (Miss. 1973).
Although generally speaking, protests are limited to objections from residents of the affected area, this statutory procedure provides that notice be given to persons interested in, affected by, or objecting to incorporation. Miss. Code Ann. § 21-1-15 (1972) Contra; C. Rhyne, The Law of Local Government Operations § 2.17 (1980); 62 C.J.S. Municipal Corporations, § 11 (1949); 56 Am.Jur. § 50 (1971). This case questions the prerogative of an adjacent existing city to challenge the incorporation of a nearby unincorporated area: may the objecting municipality attack the technical jurisdictional compliance of the petition, or merely the reasonableness, convenience and necessity? To answer this question, this Court concludes that since notice to a nearby existing municipality is statutorily required before incorporation, and since the statute further provides that "persons" interested in, affected by, or objecting to an incorporation shall be noticed, the statute may be reasonably construed to mean that the municipality is such a "person" entitled to object to all facets of the hearing.

A.
Having concluded that Pascagoula may challenge the technical compliance of the petition, this Court now looks to its arguments.
First, the appellants contend that the petition for incorporation was defective in that Miss. Code Ann. § 21-9-15(2) (1972)[2] requires that any municipality in a *199 class 1 county bordering on the Mississippi sound and the State of Alabama, traversed by U.S. Hwy. 90 shall have a mayor and six council members, whereas the petition filed named only a mayor and five council members. Appellees argued that this statute set forth by appellant is a "private" statute and was intended to apply only to the City of Pascagoula and that whenever public statutes conflict with private statutes, the public statutes must prevail.
Additionally, this statute applies to "`any municipality ..." whereas this petition affects an unincorporated area not yet a municipality. This Court agrees with the appellees that this section has no application to this case.

B.
The appellants also contend that the petition failed to allege the assessed value of real property in the area proposed for incorporation and failed to use the latest available property assessment.
Miss. Code Ann. § 21-1-13(5) states that the petition "shall set forth the assessed valuation of the real property in such territory according to the latest available assessments thereof... ." Petitioners' witness testified he used the 1980 tax rolls, the latest available assessments at time of filing petition in 1981, which showed an assessment of $17,755,488; the proof showed an assessed valuation of $13,362,275.
It appears from the record that the petition for incorporation was in substantial compliance with the statute and any contradictions arising between the pleading and proof for incorporation were decided by the chancellor hearing the petition. Only upon manifest error of the trial court will this Court reverse the chancellor's findings. See Culbreath v. Johnson, 427 So.2d 705 (Miss. 1983); Cotton v. McConnell, 435 So.2d 683 (Miss. 1983). This Court finds no merit to this argument.

C.
The municipal objector also challenged the defectiveness of the petition as a matter of law for failure to include signatures of sixty-six (66) and two-thirds (2/3rds) percent of the qualified electors residing in the area proposed to be incorporated.
Miss. Code Ann. § 21-1-13(3) (1972) prescribes that a petition for incorporation "shall be signed by at least two-thirds of the qualified electors residing in the territory proposed to be incorporated." This assignment questions the validity and method of determining the number of qualified electors. See Miss. Code Ann. § 21-11-1 (Supp. 1985) (Designates a municipal voter as "every person who ... has resided within the corporate limits for thirty (30) days before he offers to vote ... if properly registered as provided by law ..."); Miss. Code Ann. § 23-5-85 (1972).
Miss. Code Ann. § 23-5-31 (Supp. 1985) provides that "every person entitled to be registered as an elector ... and who has signed his name on the application for registration to vote shall be registered by the registrar on the registration books of the election district of the residence of the person." Miss. Code Ann. § 23-5-73 (Supp. 1985) provides "the poll book of each election district shall have printed or written ..." the "names of electors ..." and further states, "[w]hen election commissioners determine that any elector is disqualified from voting, by reason of removal from the district, or other cause, that fact shall be noted on the registration book and his name shall be erased from the poll book." Procedures for the purging of the registration books and the poll books statutorily mandate the five commissioners of election to remove names of "persons erroneously thereon, or who have died, removed or become disqualified as electors from any cause." Miss. Code Ann. §§ 23-5-79 through 23-5-82 (Supp. 1985). Thus, county registration and poll books most accurately reflect the number of qualified electors. However, these records do not remain static, but must be corrected to reflect changes of residences, etc.
In this case, petitioners used the voter rolls of Jackson county and canvassed *200 the affected area. Additionally, telephone books, postal lists, and utility consumer rolls were reviewed. Gautier citizens proposing incorporation also wrote personal letters and made telephone calls to contact electors. Their investigation compiled a list of some four hundred people who had moved from Gautier[3] for various reasons. The proponents for incorporation then requested the removal of those names. It is charged by the objecting municipality that less than a quorum of three commissioners purged the voter poll and registration books. Miss. Code Ann. § 23-5-59. However, the testimony shows that the commissioners themselves directed the purging of the voter registration and poll books. These books alone constitute the most viable record by which to determine the number of qualified electors in a given area. When it is established that they are inaccurate, the statutes condone a purging of these records. This Court finds no fault with actions taken by the Gautier incorporators to aid the commissioners of election in removing the names of non-resident or deceased electors. See Bridges v. The City of Biloxi, 250 Miss. 717, 168 So.2d 40 (1964). (An attorney involved in a litigation testified as to his search of the voter rolls to establish the number of electors.)
Additionally, the appellants argue that 792 affidavits, offered into evidence purporting to establish that certain registered voters had become non-residents, are fraught with error and failed to establish the burden of proof of non-residency.
The appellees state that the affidavits were not offered for the truth of the matter asserted, but to demonstrate the process by which the petitioners sought to locate electors of the area to be incorporated.
This Court holds that the affidavits offered, even though hearsay, may be received for the limited purposes offered. The chancellor's finding that the necessary jurisdictional facts were established by the evidence of the necessary number of qualified voters of the area affected is supported by the record. The Supreme Court cannot overturn the decree of a chancellor unless it finds with reasonable certainty that the decree is manifestly wrong on a question of law or interpretation of facts pertaining to legal questions. Enlargement of Boundaries of Yazoo City v. City of Yazoo City, 452 So.2d 837 (Miss. 1984). This Court finds no error in this assignment by the City of Pascagoula.

III.

Did the lower court err in not directing a verdict for Pascagoula, or finding against the petitioners for incorporation on the grounds that public convenience and necessity do not require incorporation?
Miss. Code Ann. § 21-1-17 (1972) states: "If the chancellor finds from the evidence that the proposed incorporation is reasonable and is required by public convenience and necessity, then he shall enter a decree declaring such municipal corporation to be created as requested in such petition... ."
In Rouse v. City of Pascagoula, 230 So.2d 543 (Miss. 1970), there was a similar conflict of evidence and opinion as to whether the community of Gautier should be incorporated. This Court there stated that the legislative intent of the statute was to place [the power of finding that public convenience and necessity] within the restricted discretion of the chancellor. Id. at 548.
The power vested in the chancery court is the judicial function of deciding that a petition is sufficient and that the statutory jurisdictional conditions have been met. To determine public convenience and necessity, this Court sets forth the following factors as some to be considered: the governmental services presently provided; the quality and adequacy of all services provided, Lowe v. City of Jackson, 336 So.2d 490 (Miss. 1976); the *201 services expected from other sources, e.g. neighboring municipalities, water districts, county services, etc.; the impairment of an immediate right vested in an adjoining city, See Schatzman v. Town of Greenfield, 273 Wis. 277, 77 N.W.2d 511 (1956) (city proper party to object only where showing of impairment of immediate right); the substantial or obvious need justifying incorporation, Hamilton v. Incorporation of Petal, 291 So.2d 190 (Miss. 1974).
Appellants presented testimony at trial as to the several services and utilities provided to the area of Gautier by Jackson County, the City of Pascagoula, the Gautier Utility District of Jackson County, Mississippi Gulf Coast Regional Wastewater Authority, and the Pascagoula Municipal Separate School District in the areas of police protection, fire protection, water and sewer service, schools, street maintenance, planning and zoning, recreation, garbage collection, gas service, public library, ambulance service, animal control and insect control.
Appellants argue that there is not a single governmental service identified by petitioners unavailable to the area proposed to be incorporated, citing In Re City of Pearl, 279 So.2d 590 (1975). Having asserted that the above services are currently available and adequate in Gautier, appellants questioned the lower court's finding of a "substantial or obvious need" justifying the incorporation of a new municipality as seen in Hamilton v. Incorporation of Pearl, 291 So.2d 190 (Miss. 1974).
The appellees also cited Hamilton, supra, in support of incorporation. The facts of that case evidenced a dramatic population increase in the Petal area in the ten years preceding incorporation. Appellees argued that the situation in Gautier parallels that of Petal in growth of schools, businesses, churches, library, newspaper, and other civic organizations. Additionally, petitioners assert that the record holds substantive evidence of community pride, self-image, and identity above the need for governmental services.
The record shows that services absent or inadequate in the Gautier area, and not provided by other sources, were an adequate fire department, law enforcement, recreational facilities and a sewage system.
Looking to the testimony presented, the Court finds that the chancellor was not in error in finding that incorporation was required as a matter of public convenience and necessity.
The question here again becomes one of whether the decision of the lower court was one of manifest error. After a thorough review of the record, it cannot be said that the chancellor's decision was manifestly wrong.

IV.

Did the court err in not directing a verdict or finding against the petitioners for incorporation on the grounds that the proposed incorporation is not reasonable?
The law is clear that the decision as to whether the incorporation of a municipality is reasonable is a matter for the trial court. Rouse, 237 So.2d at 548.
The following factors, although by no means exhaustive, are examples of those to be considered by the chancery court when making a determination of reasonableness. These factors may overlap with those determinative of public convenience and necessity. No one factor per se determines reasonableness, but a consideration of all pertinent factors gives guidance to reach an ultimate conclusion. Factors are: whether a proposed area has definite characteristics of a village, In Re Incorporation of Village of Twin Lakes, 226 Wis. 505, 277 N.W. 373 (1938); whether the residents of the proposed area for incorporation have taken initial steps toward incorporation and whether a nearby city has initiated preliminary proceedings toward annexation, Fields v. City of Jackson, 280 So.2d 837 (Miss. 1973); Application of Fernan Lake Village, 80 Idaho 412, 331 P.2d 278 (1958); In Re Town of Waconia, 248 Iowa 863, 82 N.W.2d 762 (1957); Couch v. City of Forth Worth, 287 S.W.2d 255 (Texas *202 1956); whether there has been any financial commitments toward incorporation or annexation proceedings; whether a neighboring city has the prerogative to contest incorporation, although consent of nearby city not required under Miss. Code Ann. § 21-1-17 (1972); Contra: Tenn. Code Ann. § 6-1-205 (1985); Corporation of Collierville v. Fayette County Election Comm'n., 539 S.W.2d 334 (Tenn. 1976); Town of Godfrey v. City of Alton, 33 Ill. App.3d 978, 338 N.E.2d 890 (1975); whether incorporation effects an existing city within three miles, City of Jackson & Pearl v. City of Richland Incorporated, 318 So.2d 843 (Miss. 1975); City of Meridian v. Marion, 255 So.2d 906 (Miss. 1971); whether population of area shows an increase and continuity of settlement, Hamilton v. Incorporation of Petal, 291 So.2d 190 (Miss. 1974); Bd. of Supervisors of Norfolk County v. Duke, 113 Va. 94, 73 S.E. 456 (1912); whether a community has a separate identity, Hamilton, supra; whether natural geographical boundaries separate an area from other municipalities; whether transportation is affected; whether incorporation will affect the interest of landowners in the affected area, Western Line Consol. v. City of Greenville, 465 So.2d 1057 (Miss. 1985); whether cost of operating the municipality is prohibitive, In Re City of Pearl, 279 So.2d 590 (Miss. 1973); whether an estimated tax base of proposed area will support incorporation; whether the overall welfare of residents of affected area is improved by incorporation, City of Meridian v. Town of Marion, 255 So.2d 906 (Miss. 1971).
Appellants argued that the proposed incorporation would lead to costly duplication of services, and it is not reasonable to add another municipal layer of government.
Pascagoula further argued that the proposed incorporation of Gautier would deter further expansion of the City of Pascagoula, as Pascagoula has practically no land area remaining for residential development within its boundaries. The City of Pascagoula council members all testified they personally favor annexation of the Gautier area, although they presented no definite date as to a proposed annexation.
Appellant's final argument is that the proposed incorporation is not reasonable for lack of revenues available in the proposed area. Pascagoula's expert witness testified that the only conceivable use for the area proposed for incorporation would be residential and it does not have a sufficient tax base to sustain expenditures for municipal level services.
The appellees concede that the area is besieged with problems and that incorporation will likely result in added costs for citizens in the incorporation area, but argue that incorporation can not be found unreasonable due to excessive costs. The law, Gautier residents assert, does not require that a large growing community beset by many problems be denied the right to incorporate until some indefinite time in the future when it may be annexed by some other municipality. In Re City of Pearl, 279 So.2d 590 (Miss. 1973).
Appellees contend that the welfare of the citizens of Gautier is the most important consideration in regard to the incorporation as cited in City of Meridian v. Town of Marion, 255 So.2d 906 (Miss. 1971).
Looking to the record, there is conclusive evidence to show that the area proposed to be incorporated has more than 10,000 residents. The principal objector, the City of Pascagoula, lies across the West Pascagoula River from the community of Gautier. The chancellor heard testimony showing a present need for police protection in the area affected which could be better provided by incorporation. Additionally, there is a voluntary fire department in Gautier, but any fire truck assistance from Pascagoula must cross a draw-bridge over one of the busiest ports in Mississippi. Gautier has the highest fire insurance rating in the state. It was shown that better fire protection, resulting savings in fire insurance premiums and reduction in response time to structural fires could be effected with incorporation. Pascagoula has no projected plans or proposals to annex Gautier in *203 the near future. There is a salient need to improve recreational facilities in the area, which incorporation would benefit. The people of Gautier are committed to a sense of community and consider themselves a separate entity. Incorporation would allow Gautier citizens to control their own affairs through self-government. This Court finds ample support for the chancellor's finding that the proposed incorporation was reasonable.

V.
The appellant's final assignment of error, that the court erred in accepting petitioner's witness, Steven Wages, as an expert is without merit. Early-Gary, Inc. v. Walters, 294 So.2d 181 (Miss. 1974).

VI.
After hearing the conflicting expert opinions and radically divergent testimony, the chancellor accepted that proof offered on behalf of Gautier. In this Court's judgment, that evidence was substantial and formed a sufficient basis to support the decree appealed. Supported by substantial evidence and not manifestly wrong or against the weight of the evidence, the chancellor's decree is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, ROBERTSON and ANDERSON, JJ., concur.
SULLIVAN, J., not participating.
NOTES
[1] Whenever the inhabitants of any unincorporated territory shall desire to incorporate such territory as a city or town, they shall prepare a petition and file same in the chancery court of the county in which such territory is located or, if the territory is located in more than one county, the chancery court of either county. Said petition shall meet the following requirements:

(1) it shall describe accurately the metes and bounds of the territory proposed to be incorporated and there shall be attached to such petition, a map or plat of the boundaries of the proposed municipality;
(2) it shall set forth the corporate name which is desired;
(3) it shall be signed by at least two-thirds of the qualified electors residing in the territory proposed to be incorporated;
(4) it shall set forth the number of inhabitants of such territory;
(5) it shall set forth the assessed valuation of the real property in such territory according to the latest available assessments thereof;
(6) it shall state the aims of the petitioners in seeking said incorporation, and shall set forth the municipal and public services which said municipal corporation proposes to render and the reasons why the public convenience and necessity would be served by the creation of such municipal corporation;
(7) it shall contain a statement of the names of the persons the petitioners desire appointed as officers of such municipality; and
(8) it shall be sworn to by one or more of the petitioners.
When such a petition shall be filed, it shall be docketed as are other suits and causes in the chancery courts of this state.
[2] (2) "... [I]n any municipality situated in a Class 1 county bordering on the Mississippi Sound and the State of Alabama, traversed by U.S. Highway 90, the legislative power of such municipality in which the council-manager plan of government is in effect shall be vested in a council consisting of a mayor and six (6) councilmen... ."
[3] Gautier has experienced in part a large transient population during flux times of employment and unemployment at Ingalls Shipyards at Pascagoula, an industry that has employed up to 25,000 employees at given times.