DIAZ, Presiding Justice,
Dissenting:
¶ 29. I cannot agree that the information sought by PETA constitutes “trade secrets and commercial and financial infor *611 mation of a proprietary nature,” and I must dissent from today’s opinion.
¶ 30. First, the opinion does not apply the appropriate standard. Because the chancellor’s order is an application of law to the facts, the order’s factual conclusions are reviewed for an abuse of discretion. “The Supreme Court cannot overturn the decree of a chancellor unless it finds with reasonable certainty that the decree is manifestly wrong on a question of law or interpretation of facts pertaining to legal questions.” City of Pascagoula v. Scheffler, 487 So.2d 196, 200 (Miss.1986) (citing Enlargement of Boundaries of Yazoo City v. City of Yazoo City, 452 So.2d 837 (Miss.1984)).[22]
¶ 31. Second, the majority accepts at face value lams’ and MSU’s blanket assertion that the entire IACUC protocol form constitutes “proprietary information” with “independent economic value.” As the chancellor noted, “MSU and IAMS have chosen to simply label the protocols as trade secrets. They do not articulate, particularize or specify a justification so as to establish with specificity that the protocols are a trade secret.” Dr. Carey’s affidavit does not provide evidence of this argument; it is nothing more than a legal conclusion, a decision entirely within the purview of the chancellor.
¶ 32. At the same time, the majority finds that PETA put forth no evidence to the contrary. On this point the majority is mistaken — the blank form provided by PETA demonstrates that they were merely seeking information concerning the discomfort, distress, and pain endured by the animals. Examples of the information sought by the IACUC form are
a. The species, source, breed, health status, age, sex, etc., of the animals;
b. Special requirements for maintaining the animals (temperature range, caging/pen type, bedding/litter type, type of water, diet and feeding requirements);
c. The maximum number of animals to be used per level of pain and/or distress;
d. An explanation of the type and duration of restraint, and plans to monitor restraint;
e. A description of prolonged distress;
f. A description of minor invasive manipulations (blood collection, cathet-erization, etc.);
g. Whether drugs or compounds that will be used are approved for use in the species;
h. Whether access to food or water will be restricted;
i. Whether surgical procedures are involved and, if so, whether the procedures are invasive and whether animals will be subjected to multiple procedures;
j. Whether anesthetic, analgesics or tranquilizers will be used to reduce pain or distress;
k. Identification of any prior use of the animals in painful or distressful experiments;
l. A description of plans to avoid or address unintended pain or distress;
m. Criteria used to determine a humane endpoint for the animals, the *612 final disposition of the animals and, if the animals will be killed, the method of euthanasia; and
n. Proof of a literature search designed to reduce, refine, or replace the use of live animals.
It would be difficult to see how this information could be considered proprietary information, and today’s opinion offers no explanation as to how this information would have any independent economic value.
¶ 33. Third, the majority finds that “the chancellor’s error was in concluding that the protocol forms were not developed under contract.” However, whether the protocol review forms were developed under contract, is immaterial to this case. The statute plainly states that the question is whether the records constitute “trade secrets and confidential commercial and financial information of a proprietary nature developed by a college or university under contract.” Miss.Code Ann. 25-61-9 (Rev. 2006). One cannot circumvent these requirements for exemption simply because the information was produced as a result of a contract. Were this so, the statute would read “trade secrets and confidential commercial and financial information of a proprietary nature or information developed by a college or university under contract.”
¶ 34. Finally, the argument that this Court must reverse the decision of the chancellor because PETA did not provide evidence to dispute the nature of the information contains a fatal defect: how could PETA possibly provide evidence to the contrary (other than the blank form) without access to the sealed information?
¶ 35. After reviewing the sealed documents, I find that none of the information ordered for disclosure is exempt under the Mississippi Public Records Act. Therefore, because the chancellor did not abuse her discretion, I would affirm the order.

. The majority points out in note 17 that whether the protocols were developed under contract is an "interpretation of law.” Even if this question was an interpretation of law that should be reviewed de novo, as explained below, this finding relates to only one issue which is immaterial to the question of whether the information constitutes "trade secrets and confidential commercial and financial information of a proprietary nature.” Miss. Code Ann. 25-61-9 (Rev.2006).